NUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
GRISTEDE'S FOODS, INC.,

     Plaintiff,

              MEMORANDUM AND ORDER

   -against-

              06-CV-1260 (CBA)

UNKECHAUGE NATION a/k/a UNKECHAUGE
POOSPATUCK TRIBE; HARRY WALLACE;
POOSPATUCK SMOKE SHOP AND TRADING POST;
THE SHINNECOCK TRIBE, a/k/a THE
SHINNECOCK INDIAN NATION;
RANDALL KING; JAMES W. ELEAZER, JR.;
LANCE A. GUMBS; SHINNECOCK LTD.; and
JOHN DOES 1 through 100,

     Defendants.
-------------------------------------------------------------------- X
AMON, UNITED STATES DISTRICT JUDGE

   Plaintiff Gristede's Foods, Inc. ("Gristede's") has filed suit against the Unkechauge

Nation, a/k/a Unkechauge Poospatuck Tribe (the "Unkechauge"), Lance A. Gumbs, and the

Poospatuck Smoke Shop and Trading Post (collectively, the "Unkechauge defendants"), as well

as the Shinnecock Tribe, a/k/a the Shinnecock Indian Nation (the "Shinnecock"), Harry Wallace,

Randall King, James W. Eleazer, Jr., and Shinnecock, Ltd. (collectively, the "Shinnecock

defendants").  Plaintiff alleges that the defendants have engaged in the unauthorized sale of

untaxed cigarettes to non-tribe members through smoke shops, over the internet, and through

telemarketing and print ads, and that the defendants have "created, fostered and nourished a

thriving black market in illegally discounted cigarette sales."  (Pl.'s Br. at 1.)  The complaint

alleges three federal law claims for relief and four state law claims for relief.  It alleges two

claims for civil violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d), the Racketeering Influence

and Corrupt Organizations Act ("RICO"), one against the Unkechauge defendants, and one against the Shinnecock defendants. The complaint also alleges, against all defendants, one claim of false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); two claims for violations of New York statutes prohibiting false advertising and deceptive trade practices, New York General Business Law §§ 349 and 350; a claim for common law unfair competition; and a claim for common law unjust enrichment. The defendants have moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## I.     Standard of Review

Under Rule 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although "a complaint attacked by a Rule12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007) (internal citations and quotations omitted). Thus, in order to survive a motion to dismiss, a complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" that the alleged violation of law took place. Id. at 1965. The Second Circuit has interpreted Twombly to require "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty,

490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

When determining the sufficiency of a pleading for Rule 12(b)(6) purposes, "consideration is limited to the factual allegations in plaintiffs' [ ] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted). The Court will draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002).

II.    **Discussion**

A.    **Plaintiff is Granted Leave to Amend the Complaint**

The Unkechauge argue that the case against it should be dismissed because they have not been properly named by Gristede's. New York State Indian Law §§ 150-153 specifically names the Unkechauge people as the "Poospatuck (Unkechauge) Indian Nation" or the "Poospatuck Indian tribe." However, the tribe is referenced in the complaint as "the Unkechauge Nation, a/k/a Unkechauge Poospatuck Tribe." In addition, the Unkechauge defendants argue that the "Poospatuck Smoke Shop and Trading Post" "does not exist" as "no such entity is registered with the New York Department of State or filed with the Suffolk County Clerk as a DBA, partnership or sole proprietorship." (Unkechauge Def.'s Br. at 3-4, 6.) Similarly, the Shinnecock defendants allege that "Shinnecock Ltd." is a non-existent entity because it is not registered with the New York Department of State. (Shinnecock Def.'s Br. at 20-21.)

According to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend the

complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Furthermore, an amended pleading that "changes the party or the naming of the party" against whom a claim is asserted will "relate back" to the date of the original pleading when the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original complaint, and the party received notice of the action within the period provided by Rule 4(m) for service of the summons. Fed Rule Civ. P. 15(c)(3). The Court grants the Gristede's leave to amend the complaint to properly name the Unkechauge defendants, as there is no dispute that the proper defendants received actual notice of this action prior to the expiration of the initial 120-day period for service under Rule 4(m).

In addition, the Court finds that registration with the New York Department of State is not dispositive of whether "Poospatuck Smoke Shop and Trading Post" and "Shinnecock Ltd." are suable entities. The Court declines to dismiss plaintiff's claims against these defendants on this ground.

**B.     RICO Claims**

The RICO statute makes it unlawful for any person to: (a) use or invest income from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; (b) acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity; or (d) conspire to do any of the above. 18 U.S.C. §§ 1962(a)-(d). Section 1964(c) creates a private civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." Id. § 1964(c).

In order to demonstrate standing under the RICO statute, a plaintiff must plead and

ultimately prove "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (quoting Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 904 (2d Cir. 1996)); accord Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003).  Because a civil RICO plaintiff must plead that his injuries were caused "by reason of" the defendant's RICO violation, 18 U.S.C. § 1964(c), a civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir.1990) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)) (emphasis omitted).  Furthermore, there must be a "direct relation between the injury asserted and the injurious conduct alleged."  Anza v. Ideal Steel Supply Corp., ___ U.S. ___, 126 S.Ct. 1991, 1996 (2006) ("Anza") (citing Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268 (1992)).

### 1. Plaintiff's RICO Section 1962(c) Claim

RICO Section 1962(c) prohibits conducting or participating in the affairs of an enterprise through a pattern of racketeering activity.  18 U.S.C. § 1962(c).  As discussed above, a plaintiff must allege that the conduct constituting a RICO violation caused injury to the plaintiff's business or property.  The compensable injury flowing from a violation of section 1962(c) "necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise."  Sedima, 473 U.S. at 497; see also Ouaknine, 897 F.2d at 83.   A plaintiff, therefore, must plausibly allege that the predicate acts themselves are the proximate cause of its injury.  See Anza, 126 S.Ct. at 1996-97.  Analysis of causation under Section 1962(c) is controlled by the

Supreme Court's decision in <u>Anza v. Ideal Steel Supply Corp</u>. 126 U.S. 1991 (2006), which found

that the connection between defendant's alleged tax fraud and competitor's lost sales was too

attenuated to allow a competitor to maintain civil suit for section 1962(c) violations, as the claim

failed to meet Section 1964(c)'s requirement for a "direct causal connection" between the alleged

injury and the defendant's conduct.[1] <u>See also</u> <u>Globe Wholesale Tobacco Distrib. v. Worldwide</u>

<u>Wholesale</u>, No. 06 Civ. 2865, 2007 WL 2826630, at *4 (S.D.N.Y. September 29, 2007) ("The

Section 1962(c) causation analysis is controlled by <u>Anza</u>.").

In the instant case, plaintiff asserts that defendants sell tax-free cigarettes through a

pattern racketeering activity that involves predicate acts of mail fraud in violation of 18 U.S.C. §

1341, wire fraud in violation of 18 U.S.C. § 1343, as well as violations of 18 U.S.C. § 2342 (the

Contraband Cigarette Trafficking Act), and 18 U.S.C. § 2320 ("Trafficking in Counterfeit goods

or services").  Plaintiff claims that it has been harmed because its stores "sell cigarettes at prices

that include all applicable State and local excise taxes," while defendants' illegal sales of untaxed

cigarettes "have given [them] an unfair competitive advantage over the Plaintiff which must sell

cigarettes at substantially higher prices."  (Compl. ¶¶ 5, 35.)  Thus, plaintiff asserts that it has

"lost in excess of $20 million in cigarette sales."  (<u>Id.</u> ¶ 35.)

The connection between plaintiff's injury and the defendants' alleged RICO violations is

too "attenuated" to sustain a civil RICO claim.  In this case, the RICO violation alleged by the

---

[1]         The facts of <u>Anza</u> are similar to the instant case and therefore are instructive.  In
<u>Anza</u>, the plaintiff and defendant conducted competing businesses selling steel mill products and
related supplies and services.  126 S.Ct. at 1994.  Plaintiff alleged that defendant adopted a
practice of not charging New York State sales tax to cash-paying customers, which allowed
defendant to reduce its prices without affecting its profits.  <u>Id.</u>  Plaintiff brought suit under RICO
§ 1962(c), alleging that defendant's practices gave it an illegal, competitive advantage in the
market.  <u>Id.</u> at 1995.

plaintiff is that defendants sell tax-free, and therefore discounted, cigarettes through a pattern racketeering. The direct victim of the defendants' conduct is the State of New York, who is allegedly losing tax revenue on illegally untaxed cigarettes, or perhaps the purchasers of those cigarettes, who erroneously believe that they need not pay taxes on the cigarettes. The plaintiff in this case, as in <u>Anza</u>, is not a direct victim of this conduct. <u>See Anza</u>, 126 S.Ct. at 1997 ("It was the State being defrauded and the State that lost tax revenue as a result.") Although the plaintiff in this case asserts that it has suffered its own harms by the defendants' alleged failure to charge customers applicable taxes, "[t]he cause of [the plaintiff's] asserted harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." <u>Id;</u> <u>see also</u> <u>Globe Wholesale Tobacco Distrib.</u>, 2007 WL 2826630, at *4 (dismissing plaintiff's 1962(c) claim because "[p]laintiff's alleged harm was caused by a set of actions (offering lower prices) distinct from the alleged RICO violation (transporting counterfeit tax stamps and distributing contraband cigarettes)").

As the Supreme Court has explained, "[t]his conclusion is confirmed by considering the directness requirement's underlying premises." <u>Anza</u>, 126 S.Ct. at 1997. One of the reasons informing the proximate cause requirement is that difficulties may arise when courts attempt to ascertain the damages caused by some remote action. <u>Holmes</u>, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors.") Here, as in <u>Anza</u>, the injury plaintiff alleges is its own loss of sales resulting from defendants' decreased prices. However, ascertaining how much of the plaintiff's lost profits are attributable to the defendants' alleged RICO activities would be a highly complex matter. As the Court in <u>Anza</u> noted,

"businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [the plaintiff's] lost sales were the product of [the defendant's] decreased prices." 126 S.Ct at 1997.

The Court finds unpersuasive plaintiff's argument that it has suffered a more direct injury than the plaintiff in <u>Anza</u>. Indeed, the correlation between defendants' lower prices and plaintiff's lost profits would likely have been easier to ascertain in <u>Anza</u> than in the instant case. In <u>Anza</u>, the plaintiff and defendant were one another's "principal competitor." <u>Id.</u> at 1994. By contrast, the plaintiff and defendants in this case are not direct competitors; the defendants do not operate grocery stores in the New York City metropolitan area. In addition, to the degree that plaintiff and defendant are competitors, the plaintiff is one of many proprietors affected by the defendants' alleged actions. <u>See</u> <u>Globe Wholesale Tobacco Distrib.</u>, 2007 WL 2826630, at *5 (rejecting plaintiff's attempt to distinguish <u>Anza</u> and noting that the harm suffered by plaintiff was remote, in part because "plaintiff is one of many competitors harmed by defendants' lower prices").

Plaintiff also claims that, because of the defendants' actions, many more cigarettes are sold in New York than would be otherwise. In particular, plaintiff claims that defendants sell to underage purchasers and make cigarettes "more affordable and therefore more available, thereby promoting increased smoking." (Pl.'s Br. at 36-37 (citing Compl. at ¶¶ 31, 33).) Thus, another complicating factor would be ascertaining to what extent defendants are causing the plaintiff to lose business, as opposed to creating new business. The Supreme Court explained in <u>Anza</u>:

> A court considering the claim would need to begin by calculating the portion of [the defendants'] price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of [the plaintiff's] lost sales attributable to the relevant part of the price drop. The element of proximate causation recognized in <u>Holmes [v.</u>

Securities Investor Protection Corp.] is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws.

126 S.Ct. at 1998.

In addition, as the Anza Court further observed, "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." Id. Here, the direct victim of the RICO violations is the State of New York, who has allegedly been defrauded of substantial tax revenues. If the allegations are true, the State may pursue appropriate remedies. Furthermore, determining the extent of the State's damages is far easier than determining the plaintiff's damages. "[W]hile it may be difficult to determine facts such as the number of sales [the plaintiff] lost due to [the defendants'] tax practices, it is considerably easier to make the initial calculation of how much tax revenue the [defendants] withheld from the State." Id.

In short, Anza teaches that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Id. Here, as in Anza, the answer is no. Because the plaintiff has failed to satisfy the proximate cause requirement articulated in Holmes and reaffirmed in Anza, it does not have standing to pursue its section 1962(c) claims.

**2.      Plaintiff's RICO Section 1962(a) and Section 1962(b) Claims**

In contrast to section 1962(c), which prohibits conducting or participating in the affairs of an enterprise through racketeering activity, section 1962(a) prohibits investing income from a pattern of racketeering activity in an enterprise. 18 U.S.C. § 1962(a). "[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering

income." Ouaknine, 897 F.2d at 83. "Accordingly, to state a claim under 1962(a), a plaintiff must allege an injury resulting from the defendant's investment of racketeering income in an enterprise (i.e., an 'investment injury'), separate and apart from any injury caused by the predicate acts themselves." OSRecovery, Inc. v. One Groupe Int'l., Inc., 354 F.Supp.2d 357, 371 (S.D.N.Y. 2005) (citing Ouaknine, 897 F.2d at 83; Stolow v. Greg Manning Auctions, Inc., 258 F. Supp. 2d 236, 245-46 (S.D.N.Y. 2003)). Moreover, allegations that a RICO enterprise simply reinvested racketeering proceedings back into its own activities, on their own, are insufficient to maintain a claim under § 1962(a); in that situation, "the plaintiff's injuries derive proximately not from the investment but rather from the predicate acts themselves." Allstate Insurance Co. V. Seigel, 312 F.Supp.2d 260, 271 (D.Conn. 2004); see also Falise v. American Tobacco Co., 94 F.Supp.2d 316, 348-350 (E.D.N.Y. 2000) ("Where reinvestment of racketeering proceeds back into the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity."); Leung v. Law, 387 F. Supp. 2d 105, 120-21 (E.D.N.Y. 2005) (finding that plaintiff lacked standing to sue under 1962(a) because the complaint did not "explicitly allege[] that the asserted reinvestment of the stolen funds caused a distinct injury to [the plaintiff]" or otherwise "present an injury distinguishable from the original theft") (citing Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996), vacated on other grounds, 525 U.S. 128 (1998)); Allen v. New World Coffee, Inc., No. 00 Civ. 2610, 2002 WL 432685, at *2-3 (S.D.N.Y. March 19, 2002) (noting "§ 1962(a) aims at punishing not the predicate offenses but the investment of the ill-gotten gains of the predicate offenses" and finding that plaintiff failed to allege an injury distinct from the predicate activity).

Similarly, section 1962(b) prohibits the acquisition or maintenance of an interest in an

enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(b). "[T]o state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest (i.e., an 'acquisition or maintenance injury'), as distinct from an injury caused by the predicate acts alone." OSRecovery, 354 F. Supp. 2d at 371-72 (citing Discon, 93 F.3d at 1062-63; Stolow, 258 F. Supp. 2d at 246).

With respect to its section 1962(a) claims, the plaintiff asserts that the defendants "have taken the income derived from their racketeering activity to unlawfully and unfairly compete with Plaintiffs by using the funds to improve their in-store sales activity, Internet sales, telephone sales and sales to black market resellers, thereby sharply reducing the Plaintiff's revenue from cigarette sales." (Complaint ¶¶ 44, 58.) In essence, the complaint states that the defendants are competing with the plaintiffs by selling tax-free cigarettes. However, that is precisely the injury that is alleged to have been caused by the predicate acts, and which forms the basis of the plaintiff's section 1962(c) claims. Thus, the complaint does not state an "investment injury" distinct from the injury caused by the predicate acts alone. See Globe Wholesale Tobacco Distrib., 2007 WL 2826630, at *5 (dismissing plaintiff's Section 1962(a) claims because "the complaint does not allege any facts to support an inference that the plaintiff suffered an investment injury distinct from any injury suffered as a result of the predicate acts"); Soberman v. Groff Studios Corp., 99 Civ. 1005, 1999 WL 349989, at *5 (S.D.N.Y. June 1, 1999) ("allegations that money was used or invested to further the same scheme are insufficient [to state a claim under section 1962(a) ], since they do not allege a distinct [investment] injury").

With respect to its section 1962(b) claims, the complaint states only bare bones allegations that the defendants have acquired or maintained an interest in a racketeering enterprise. (See

Compl. ¶¶ 38, 52.)  Plaintiff fails to indicate what injury, if any, resulted from an alleged violation of section 1962(b) and how that injury is distinct from the injury caused by the predicate acts. See Discon, 93 F.3d at 1062-63 (dismissing Section 1962(b) claim because plaintiff failed to "allege a 'use or investment injury' that is distinct from the injuries resulting from predicate acts").  Furthermore, plaintiff does not respond to defendants' argument that it has failed allege an "acquisition or maintenance injury" other than by referencing its cursory statements in the complaint, which simply track section 1962(b)'s language.

Accordingly, because the Gristede's has failed to state both an "investment injury" and an "acquisition or maintenance injury" distinct from the injury caused by the predicate acts, its section 1962(a) and section 1962(b) claims are dismissed.

### 3.  Plaintiff's RICO Section 1962(d) Claim

Finally, Gristede's asserts a cause of action under section 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of" sections 1962(a), (b), or (c).  18 U.S.C. § 1962(d).  To establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions."  United States v. Sessa, 125 F.3d 68, 71 (2d Cir. 1997) (internal citation omitted).  Thus, the plaintiff must allege that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise."  Id.

Moreover, to establish standing to sue under section 1962(d), a plaintiff must satisfy the proximate cause requirement of section 1964(c).  That is, a plaintiff must establish that he was injured and that his injury was proximately caused by an overt act committed in furtherance of the

conspiracy. See Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1345-46 (2d Cir. 1994). The overt act must be a section 1961 predicate act. Id. ("[S]tanding may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy.") (internal quotations omitted). In other words, "a § 1962(d) violation requires . . . an agreement to commit the requisite predicate acts, followed by the commission of a predicate act that proximately causes injury to the plaintiff." Id. at 1346 n.4.

In the instant case, the only injury that the plaintiff claims to have suffered is the same injury asserted for the alleged violations of section 1962(c), namely, lost profits arising from the defendant's sale of untaxed cigarettes. However, as explained above, these injuries were not proximately caused by the defendant's commission of the alleged predicate acts. Accordingly, the plaintiff has failed to establish standing to sue for violations of section 1962(d), and its claims must be dismissed.

Therefore, for the reasons discussed above, plaintiff's 18 U.S.C. §§ 1962(a), (b), (c), and (d) claims are dismissed.

### C. Lanham Act Claims

Plaintiff has asserted a cause action under the Lanham Act, 15 U.S.C. § 1125(a), based on defendants' advertising the sale of "tax-free" or "cheap" cigarettes. To establish an advertising claim under the Lanham Act, the plaintiff must demonstrate that the challenged advertisement is false. Lipton v. The Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers." Id.

In the instant case, the plaintiff alleges that, between 2000 and 2006, the defendants have

repeatedly stated in advertisements and marketing that they sell cigarettes "tax-free" to all consumers.  (Compl. ¶¶ 65, 67.)  The plaintiff further alleges that these advertisements are false and misleading because the cigarette sales are not tax-free under New York law.  (Compl. ¶ 66).

Article 20 of the New York Tax Law imposes a tax on all cigarettes possessed in New York State except for those cigarettes that New York is "without power" to tax.  See Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61 (1994) (citing N.Y.Tax Law § 471(1)).  New York's cigarette tax has two components: the cigarette tax imposed on possession for sale in the state pursuant to Tax Law section 471 (the "cigarette sales tax"); and the cigarette use tax imposed pursuant to Tax Law section 471-a (the "cigarette use tax").  The state cigarette use tax must be paid by any person who uses (i.e., possesses, stores, retains, imports, etc.) cigarettes in the state, not including possession for sale, for which the state cigarette sales tax has not been paid and where the use of the cigarettes is not exempt from the Article 20 tax.  See N.Y. Tax Law § 471-a.

New York lacks authority to tax cigarettes sold to tribal members for their own consumption.  Thus, cigarettes to be consumed on the reservation by enrolled tribal members are tax-exempt.  Milhelm Attea & Bros., Inc., 512 U.S. at 64 (citing Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 475-481 (1976)).  However, "on-reservation cigarette sales to persons other than reservation Indians . . . are legitimately subject to state taxation."  Id. (citing Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 160-161 (1980)).

There is currently a dispute in New York State as to whether and how to collect taxes on cigarettes sold on reservations to persons other than tribal members.  Under New York  tax law,

the burden of collecting the cigarette sales tax falls on wholesalers. N.Y. Tax Law § 471(2). Wholesalers collect cigarette sales tax by selling cigarettes affixed with tax stamps to retailers and remitting the tax payments to the state. However, the New York State Department of Taxation and Finance has allowed wholesalers to sell unstamped cigarettes to tribes, without requiring an accounting to reflect that the unstamped cigarettes are being sold only to reservation Indians. (Exh. 1, State of New York Commissioner of Taxation and Finance, Advisory Opinion Petition no. M06316A, March 16, 2006 ("The New York State Department of Taxation and Finance has a long-standing policy of allowing untaxed cigarettes to be sold from licensed stamping agents to recognized Indian Nations and reservation-based retailed making sales from qualified Indian reservations.").)

In 2005, New York passed a new tax law that would require wholesalers to sell only stamped cigarettes to Indian tribes. See N.Y. Tax Law § 471-e. Under the new scheme, tribes would be granted reimbursement coupons on a quarterly basis. Id. Those coupons would allow the possessor to purchase stamped cigarettes without paying taxes. However, a New York State Supreme Court decision has preliminarily enjoined the enforcement of § 471-e. See Day Wholesale v. State of New York, No. 06-7688, slip op. at 5 (N.Y. Sup. Ct. Jan. 2, 2007) (holding that § 471-e "is not in effect because on March 1, 2006 and subsequent thereto there has not been actions taken or rules and regulations issued that would be necessary to implement the provisions of this act"). Accordingly, wholesalers continue to sell unstamped cigarettes to reservation retailers.

Regardless of whether the State of New York allows wholesalers or reservation retailers to sell unstamped cigarettes, however, it is clear that the "ultimate incidence of and liability for the

tax [is] upon the consumer." N.Y. Tax Law § 471(2). When a non-Indian consumer in New York uses more than four-hundred cigarettes on which no cigarette sales tax has been used, he must pay a cigarette use tax on those cigarettes, at a rate of $1.50 per twenty-pack of cigarettes. N.Y. Tax Law § 471a. The consumer must pay that tax by filing a CG-15 Cigarette Use Tax Return to New York State within 24 hours of the incurring the tax liability. It is a misdemeanor for any person required to file a CG-15 to willfully fail to do so. N.Y. Tax Law § 1814(b). It is also a misdemeanor for any person to "willfully attempt[] in any manner to evade or defeat" the cigarette tax. N.Y. Tax Law § 1814(a). In addition, to discourage the sale of untaxed cigarettes, New York Tax Law § 481(b)(i) provides for the imposition of a penalty, in the amount of $150 per two hundred cigarettes, upon a person in possession of unstamped or unlawfully stamped cigarettes. Accordingly, even if reservation retailers sell unstamped cigarettes to non-Indian consumers, and even if such sales are lawful, the non-Indian consumer in New York must still pay taxes on those cigarettes, and is subject to a fine if he does not. See In re John H. Davis, DTA, No. 850262, 2006 WL 2106182 (N.Y. Div. Tax. App. July 20, 2006) (affirming imposition of $15,000 penalty for person in possession of over 20,000 unstamped cigarettes that he purchased from Indian smoke shop located on Long Island reservation).

Thus, although the defendants advertise their cigarettes as "tax-free," non-Indian purchasers are still required to pay taxes on those cigarettes to New York State. To the extent that the defendants' alleged advertisements lead consumers to believe that they need not pay any taxes on the cigarettes sold on Indian reservations, those advertisements may be "false advertising" under the Lanham Act. Defendants' motions to dismiss Gristede's false advertising claim under the Lanham Act, therefore, are denied.

**D. State Law Deceptive Acts and False Advertising Claims**

New York General Business Law § 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Similarly, New York General Business Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

To establish a <u>prima facie</u> case under section 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521 (2d Cir. 2000) (citing <u>Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25 (N.Y. 1995)). "Deceptive acts" are defined as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." <u>Id.</u> at 522 (quoting <u>Local 214 Pension Fund</u>, 85 N.Y.2d at 26). The Second Circuit has applied the same interpretation to section 350. <u>Id.</u> (citing <u>Galerie Furstenberg v. Coffaro</u>, 697 F.Supp. 1282, 1291-92 (S.D.N.Y. 1988)). Indeed, courts have noted that the standards under both sections are substantively identical. <u>See e.g.</u> <u>C.V. Starr & Co., Inc. v. Am. Int'l Group</u>, No. 06-CV-2157, 2006 WL 2527565, at *3 (S.D.N.Y. Sept. 14, 2006).

Under both sections 349 and 350, "[a]ny person who has been injured by reasons of a violation of [sections 349 and 350] of this article may bring an action in his own name." <u>Krasnyi Oktyabr, Inc. v. Trilini Imports</u>, No. CV-05-5359, 2007 WL 1017620, at *12 (E.D.N.Y. Mar. 30, 2007) (citations omitted); <u>see</u> N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name . . . ."); N.Y. Gen.

Bus. Law § 350e-(3) ("Any person who has been injured by reason of any violation of [section 350] may bring an action in his own name . . . ."). The Second Circuit has noted that "corporate competitors . . . have standing to bring a claim . . . so long as some harm to the public at large is at issue." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 257 (2d Cir. 1995) (quoting Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 786 F.Supp. 182, 215 (E.D.N.Y.), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992)); see also, City of New York v. Cyco.Net, Inc., 383 F.Supp.2d 526, 561-62 (S.D.N.Y. 2005); Constr. Tech., Inc. v. Lockformer Co., 704 F.Supp. 1212, 1222 (S.D.N.Y. 1989). "The critical question" in assessing a suit by a corporate competitor "is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." Securitron, 65 F.3d at 257.

Although defendants argue that the plaintiff has failed to allege any harm to the public at large, it is clear that a significant portion of the injury at issue in the instant claim is an injury to the public. That is, if plaintiff's allegations are true, the defendants are defrauding the state of tax revenue and inducing consumers to violate tax laws by purchasing unstamped cigarettes, thereby exposing those consumers to criminal fines. These allegations are sufficient to establish plaintiff's standing to sue under sections 349 and 350.

The defendants also argue that plaintiff has failed to state a claim for relief under sections 349 and 350 because it has failed to assert any misleading or deceptive act, practice, or advertisement. However, as discussed in relation to the plaintiff's Lanham Act claims, while wholesalers continue to sell unstamped cigarettes to Indian retailers, a non-Indian consumer purchasing from an Indian retailer remains responsible for paying taxes on those cigarettes. Accordingly, to the extent that plaintiff's allegations are true and the defendants advertise that

their cigarettes are tax-free, this is misrepresentation, as it is likely to mislead the consumer into believing that he or she need not pay taxes on purchased cigarettes. Thus, Gristede's has properly alleged a misleading and deceptive act, practice or advertisement under sections 349 and 350.

### 1. Plaintiff's claims are limited by a three-year statute of limitations

When a federal court presides over supplemental state law claims, state substantive law controls. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Statute of limitations is part of New York substantive law. See e.g. Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002); Architectronics, Inc. v. Control Systems, Inc., 935 F.Supp. 425, 430-31 (S.D.N.Y. 1996).

Defendants assert that plaintiff's claims alleging violations of section 349 and section 350 are governed by the three-year statute of limitations of section 214(2) of the New York Civil Practice Law and Rules. See Gaidon v. Guardian Life Ins. Co., 94 N.Y.2d 330 (1999) ("Gaidon I"); Beller v. William Penn Life Insurance Co., 8 A.D.3d 310, 314 (N.Y. App. Div. 2004) ("A General Business Law § 349 cause of action is governed by a three-year limitations period, which accrues when the plaintiff has been injured by a deceptive trade act or practice in violation of the statute."). The plaintiff argues that a six-year statute of limitations applies, as these section 349 and 350 actions are grounded in fraud and the common law statute of limitations for fraud is six years.

As the New York Court of Appeals explained, "claims which, although provided for in a statute, merely codify or implement an existing common-law liability, . . . are not governed by CPLR 214(2) but by the Statute of Limitations applicable to their common-law sources." Gaidon v. Guardian Life Ins. Co., 96 N.Y.2d 201, 209-10 (N.Y. 2001) ("Gaidon II") (quoting Matter of

<u>Motor Vehicle Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.</u>, 89 N.Y.2d 214, 220-221 (N.Y. 1996).  In contrast, section 214(2) applies to "claims which, although akin to common-law causes, would not exist but for the statute."  <u>Id.</u> at 209 (quoting <u>Matter of Motor Vehicle Acc. Indem. Corp.</u>, 89 N.Y.2d at 220-21).

The Court of Appeals has concluded that section 349, "as invoked in this case, falls in the latter category.  While section 349 may cover conduct 'akin' to common-law fraud, it encompasses a far greater range of claims that were never legally cognizable before its enactment."  <u>Id.</u>  In particular, "§ 349 contemplates actionable conduct that does not necessarily rise to the level of fraud.  In contrast to common-law fraud . . . § 349 is a creature of statute based on broad consumer-protection concerns."  <u>Id.</u>  Section 350 is interpreted similarly.  The Court of Appeals has noted that "[t]he scope of [section] 350 is equally broad [as section 349], prohibiting the promulgation of false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  <u>Karlin v. IVF America, Inc.</u>, 93 N.Y.2d 282, 290 (N.Y. 1999) (internal quotations omitted).  Section 350 "has elements different from, and more relaxed than, common law fraud."  <u>Williams v. Dow Chemical Co.</u>, No. 01-cv-4307, 2004 WL 1348932, at *6 (S.D.N.Y. Jun 16, 2004).

Accordingly, Sections 349 and 350 are governed by CPLR § 214(2).  <u>Williams v. Dow Chemical Co.</u>, 2004 WL 1348932, at *6 (citing <u>Soskel v. Handler</u>, 736 N.Y.S.2d 853 (N.Y. Sup. Ct.2001) (applying CPLR § 214(2) to section 350 claim under a <u>Gaidon II</u> analysis).  Since <u>Gaidon II</u>, New York courts have uniformly applied a three-year statute of limitations to section 349 and section 350 cases.  <u>See, e.g.</u>, <u>Morelli v. Weider Nutrition Group, Inc.</u> 275 A.D.2d 607, 712 N.Y.S.2d 551 (N.Y App. Div. 2000) ("Claims pursuant to General Business Law § 349 are

governed by the three-year limitation period set forth in CPLR 214(2).") (citing <u>Cole v. Equitable</u> <u>Life Assur. Soc'y.</u>, 707 N.Y.S.2d 56, 57 (N.Y. App. Div. 2000)); <u>Avdon Capitol Corp. v.</u> <u>Nationwide Mut. Fire Ins. Co.</u>, 658 N.Y.S.2d 383 (N.Y. App. Div. 1997); <u>Rabouin v.</u> <u>Metropolitan Life Ins. Co.</u>, 814 N.Y.S.2d 564 (Table) (N.Y. Sup. Ct. 2005) (same); <u>Soskel v.</u> <u>Handler</u>, 736 N.Y.S.2d 853 (N.Y. Sup. Ct. 2001) (applying C.P.L.R. § 214(2) to section 350 claim under a <u>Gaidon II</u> analysis); <u>see also</u> <u>Leider v. Ralfe</u>, No. 01 Civ. 3137, 2004 WL 1773330 at *9 n.5 (S.D.N.Y. Jul. 30, 2004) (citing <u>Gaidon II</u>, 96 N.Y.2d at 211-12, for the proposition that the statute of limitations for claims brought under Sections 349 and 350 is three years). The sole case cited by the plaintiff in support of a six-year statute of limitations, <u>Quiroga v. Fall River</u> <u>Music, Inc.</u>, No. 93-CV-3914, 1995 WL 103842 (S.D.N.Y. Mar. 7, 1995), was decided prior to <u>Gaidon II</u>.

The claims asserted here under sections 349 and 350 are clearly broader than common law fraud. Accordingly, this Court concludes that a three-year statute of limitations applies to both the section 349 and 350 claims.

### 2. Time bar

Under New York law, a claimant's cause of action accrues upon injury by the deceptive act or practice, <u>i.e.</u>, "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." <u>Gaidon II</u>, 96 N.Y.2d at 210; <u>Beller</u>, 8 A.D.3d at 314. The defendants argue that "[t]here are no tolling provisions which allow for renewal of the limitations period under N.Y. Gen. Bus. Law" and that "the claim accrues only once (as of the date of the initial injury) and does not continue to accrue upon each subsequent violation."

While the Court agrees that plaintiff's cause of action accrues upon injury, it notes that plaintiff has alleged more than one act of deception and false advertisement under sections 349 and 350. (See Compl. ¶ 74 ("defendants have . . . stated, through the Internet, the mail, in newspaper advertising, in billboards and through telephone marketing, that they sell . . . cigarettes 'tax-free' . . . .").) Insofar as each deceptive act or false advertisement, subsequent to the first, may convey misinformation to additional consumers and inflict new injuries, it is not clear to the Court that plaintiff's claims under Sections 349 and 350 are time barred in their entirety. Thus, although Gristede's may not assert any claims which arose prior to March 20, 2003, three years before the complaint was filed, the Court declines to dismiss claims based upon conduct taking place on or after that date.

### E. State Law Unfair Competition Claims

Plaintiff's sixth claim for relief alleges that "the defendants, through the illegal sale of cigarettes . . . have obtained an unfair competitive advantage over the plaintiff." (Complaint ¶ 85.) Under New York law, the "essence" of a common law claim of unfair competition "is that the defendant has misappropriated the labors and expenditures of another." Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980). That is, "[a] cause of action for unfair competition requires unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent . . . ." Roy Export Co. Establishment Etc. v. Columbia Broadcasting System, Inc., 503 F. Supp. 1137, 1151-1152 (S.D.N.Y. 1980); Coors Brewing Co. v. Anheuser-Busch Co., 802 F. Supp. 965, 975 (S.D.N.Y. 1992). It is not sufficient for the plaintiff to assert that the defendants' actions are unfair. Rather, the plaintiff must allege that the defendants misappropriated its labors and expenditures. As Gristede's has failed to do so, its

unfair competition claims is dismissed.

**F.      Unjust Enrichment**

"Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant." Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 203 n.8 (2d Cir. 2004) (citing Lake Minnewaska Mountain Houses, Inc. v. Rekis, 259 A.D.2d 797 (3d Dep't 1999)). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (quoting City of Syracuse v. R.A. C. Holding, Inc., 258 A.D.2d 905 (4th Dep't 1999)). "It is important to note, however, the nature of an unjust enrichment claim in New York: 'The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.'" Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 575, 586 (2d Cir. 2006) (quoting Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572 (2005)).

Although there is conflicting authority on the extent of the relationship required between the plaintiff and defendant in order to sustain a claim for unjust enrichment, compare Reading Int'l, Inc. v. Oaktree Capital Mgmt., 317 F.Supp.2d 301, 333-34 (S.D.N.Y.2003) (claims for unjust enrichment "clearly contemplate that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship"), with Cox v. Microsoft Corp., 8. A.D.3d 39, 40-41 (1st Dep't 2004) (direct dealing not required to state a claim for unjust enrichment), the weight of authority suggests that there are circumstances where the relationship between a plaintiff and defendant is simply too attenuated to support this claim. See Sperry v. Crompton

Corp., 8 N.Y.3d 204, 215-16 (N.Y. 2007) (holding that while privity is not required, the

connection between plaintiff and defendant is too attenuated to support an unjust enrichment

claim); State ex rel. Spitzer v. Daicel Chemical Industries, Ltd., 840 N.Y.S.2d 8, 12 (1st Dep't

2007) (same); In re Canon Cameras, No. 05 Civ. 7233, 2006 WL 1751245, at *2 (S.D.N.Y. June

23, 2006) (the relationship between the plaintiff and a particular defendant "may be too attenuated

to support an unjust enrichment claim"); Redtail Leasing, Inc. v. Bellezza, No. 95-5191, 1997 WL

603496, at *8 (S.D.N.Y. Sept. 30, 1997) ("[A]n unjust enrichment claim, which is a

quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with

a defendant."); In re Motel 6 Sec. Litig., Nos. 93-2183,  93-2866, 1997 WL 154011, at *7

(S.D.N.Y. Apr. 2, 1997) ("The requirements [of unjust enrichment] clearly contemplate that the

defendant and the plaintiff must have had some type of direct dealing, an actual relationship or

some greater substantive connection than is alleged in this case.").

In the instant case, plaintiff has alleged no prior course of dealing with the defendants.

See Reading Int'l, Inc., 317 F. Supp. 2d at 334 (finding no unjust enrichment claim as plaintiff

has "not alleged that they had a contractual or quasi-contractual relationship with defendants, and

in fact have alleged no prior course of business dealings with defendants whatsoever").  Rather,

plaintiff simply asserts that the defendants have been unjustly enriched by "illegally and

improperly [selling] cigarettes in New York without charging applicable excise and sales taxes,"

and that this "conduct has improperly diverted cigarette sales from the Plaintiff."  (Compl. ¶¶ 89-

90.)  Although the plaintiff's claim recites the elements of unjust enrichment under New York

law, the connection between plaintiff and defendant is too attenuated to support the claim.

Allowing plaintiff to maintain such a claim "would remove the elements of unjust enrichment

from the context in which they must be viewed: as an alternative to contract, where a contractual relationship has legally failed." Reading Int'l, Inc., 317 F. Supp. 2d at 333-34 (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 905 (2d Cir. 1997) ("[U]nder the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied contract to prevent one person who has obtained a benefit from another. . . from unjustly enriching himself at the other party's expense."). Accordingly, plaintiff's unjust enrichment claim fails.

## CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss Gristede's RICO claims, state law unfair competition claims, and unjust enrichment claims are granted. The defendants' motions to dismiss the remaining claims are denied. Furthermore, the plaintiff is granted leave to replead so as to properly name the Unkechauge defendants.

SO ORDERED.

Dated: Brooklyn, New York
       November 28, 2007

Carol Bagley Amon
United States District Judge