UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GRISTEDE'S FOODS, Inc.,

                         Plaintiff,

     -against-

POOSPATUCK(UNKECHAUGE) NATION,
a/k/a POOSPATUCK INDIAN TRIBE,
a/k/a UNKECHAUG INDIAN NATION,
a/k/a UNKECHAUG NATION; HARRY
WALLACE; THE POOSPATUCK SMOKE SHOP
AND TRADING POST; GOLDEN FEATHER
CIGARETTE EXPRESS; KOKO SMOKE;
POOSPATUCK INDIAN OUTPOST;
MONIQUE'S SMOKE SHOP, a/k/a RAINBOW
SMOKE; RED DOT & FEATHER SMOKE
SHOP; SMOKING ARROW SMOKES; TDM
DISCOUNT CIGARETTES; POOSPATUCK
TRADING CO. & SMOKE SHOP; SMOKE
WAREHOUSE; BARGAIN BUTTS, a/k/a
BARGAINBUTTS.COM; SHAWN MORRISON;
KEN DIMONEICO; RODNEY MORRISON;
RONNIE BELL; JESSEY WATKINS;
RAYMONG HART; JENNIFER DAVIS;
DENISE PASCHALL; TOMISINA MACK; THE
SHINNECOCK TRIBE, a/k/a THE
SHINNECOCK INDIAN NATION; GORDELL
WRIGHT; FREDERICK C. BESS; LANCE A.
GUMBS, a/k/a LANCELOT GUMBS;
SHINNECOCK TRADING POST LTD., a/k/a
SHINNECOCK LTD.; SHINNECOCK SMOKE
SHOP; RAINDROP'S QUICK STOP, a/k/a
THUNDERBIRD COFFEE SHOP; TRUE
NATIVE SMOKE SHOP; BNB TOBACCO
PRODUCTS; JONATHON SMITH; DIANE C.
VIEIRA; HOLLY DAVIS; BRIAN N. BESS;
ANDRE DENNIS; TAOBI SILVA; and JOHN
DOES 1 through 100,

                         Defendants.

----------------------------------X

**MEMORANDUM & ORDER**

06-cv-1260 (KAM)

**MATSUMOTO**, United States District Judge:

1

Pending before the court is the plaintiff Gristede's Foods, Inc.'s ("Gristede's" or "plaintiff") motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss counterclaims by the defendants Shinnecock Indian Nation ("tribe" or "Shinnecock"), Gordell Wright, Frederick C. Bess, and Lance A. Gumbs, each sued in his official capacity as an alleged senior official of the Shinnecock Nation (together, the "Shinnecock tribal defendants"); and Lance A. Gumbs, in his individual capacity, and the Shinnecock Trading Post (together, "Gumbs defendants")(collectively, "Shinnecock defendants").  For the following reasons the plaintiff's motion is granted.

## BACKGROUND

### I.   Procedural History

On March 20, 2006, plaintiff commenced this action against the Unkechauge Nation, a/k/a Unkechauge Poospatuck Tribe (the "Unkechauge" or "tribe") and the Shinnecock; individual defendants Harry Wallace ("Wallace"), Randall King, James W. Eleazer, Jr., and Lance A. Gumbs; and the Poospatuck Smoke Shop and Trading Post (the "Poospatuck Smoke Shop" or "Smoke Shop"); and Shinnecock, Ltd.  Plaintiff, the owner of several supermarkets in the New York City metropolitan area and on Long Island, New York, alleged violations of RICO and the Lanham Act,

2

and state law unjust enrichment, unfair competition, deceptive trade practices, and false advertising claims based upon defendants' tax-free cigarette sales and advertising. In July 2006, the defendants who were a party to the action at the time filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that they are immune from suit by virtue of their sovereign immunity as Indian tribes. In an order of December 22, 2006, the court deferred ruling on the motion pending further briefing and an evidentiary hearing on the tribal status of the Shinnecock and Unkechauge defendants. After filing a motion for reconsideration, the defendants were granted leave to file new Rule 12 motions, and the motions to dismiss pursuant to Rule 12(b)(1) and for reconsideration were subsequently withdrawn without prejudice to reinstatement if the new Rule 12 motions were denied.

On November 5, 2007, the court denied in part the defendants' motion to dismiss pursuant to Rule 12(b)(6) and reinstated the parties' motion to dismiss pursuant to Rule 12(b)(1). The court set a discovery schedule and hearing for the proposed Rule 12(b)(1) motion. On December 21, 2007, plaintiff filed its Amended Complaint to include those claims sustained by the court - the false advertising claim under the Lanham Act and the state consumer fraud claims - and to properly

name Lance A. Gumbs in his individual capacity for his ownership and operation of the Shinnecock Trading Post, previously identified as Shinnecock, Ltd.  The Shinnecock, Randall King, James W. Eleazer, Jr., Lance A. Gumbs, and Shinnecock Trading Post defendants subsequently decided not to pursue the Rule 12(b)(1) motion and the court vacated the tribal status discovery schedule as to those defendants.  (Doc. Order 1/4/08.)

On August 18, 2008, plaintiff filed a Second Amended Complaint which named Gordell Wright and Frederick C. Bess, in addition to other defendants who are not parties to this motion. On October 10, 2008, the Shinnecock tribal defendants and the Gumbs defendants filed Answers to the Second Amended Complaint and asserted counterclaims against plaintiffs.  (Doc. Nos. 404, 405.)

The Shinnecock tribal defendants asserted the following counterclaims: (1) defamation based on the statement in plaintiff's Second Amended Complaint that "defendants place counterfeit tax stamps on cigarettes that they sell in order to conceal that the sales originated from Indian retailers;" (2) defamation based on the plaintiff's statement in the Second Amended Complaint that "[t]hese low cost cigarettes are purchased by under-aged teenagers who do not have to show proof of age and who could not otherwise afford full-priced cigarettes;" (3) defamation based on (a) a Newsday article by

4

Keiko Morris published on December 7, 2007, which allegedly
quotes plaintiff's attorney stating, "the Shinnecock Tribal
Defendants are '[dis]honest business people . . . with black
market cigarettes . . .' that hide in a 'veil of secrecy . . .
under the cloak of so-called sovereign immunity . . . .' in
order to engage in illegal activity,' and that the Shinnecock
tribal defendants are "'complicit in funding terrorists and
gangs,'"; and (b) defamation based on a report by United States
Representative Peter T. King, of the United States House
Committee on Homeland Security, entitled <u>Tobacco and Terror: How
Cigarette Smuggling is Funding our Enemies Abroad</u>, which the
Shinnecock tribal defendants allege contains a statement by
plaintiff that "the Shinnecock Tribal Defendants 'funnel[] money
to international terror groups . . .'"; (4) a claim for abuse of
process based on plaintiff serving on the Shinnecock defendants
"discovery requests compelling responses and production of
certain documents," in retribution for the Shinnecock
defendants' assertion of immunity; and (5) a claim of prima
facie tort for initiating the present action and engaging in
defamation.  (Shinnecock Tribal Defs.' Answer ¶¶ 102-130.)
(alterations in original.)

   The Gumbs defendants' counterclaims (1)-(3) for
defamation directly mirror those claims alleged by the
Shinnecock tribal defendants, with the exception that the

statements alleged from the <u>Newsday</u> article do not include those about the tribe's sovereign immunity. Additionally, the Gumbs defendants' counterclaims alleged the following: (4) a violation of New York General Business Law § 350 for falsely advertising the prices of items sold by plaintiff; (5) a violation of New York General Business Law § 349 for deceptive trade practices based on plaintiff's advertising of prices of items it sells; (6) a claim for interference with prospective advantage based on plaintiff's alleged interference with "proposed contracts" by wrongful means "includ[ing] but . . . not limited to commencement of the present action without cause and defamation"; and (7) a claim for prima facie tort for initiating the action and defamation. (Gumbs Defs.' Answer ¶¶ 98-138.)

Subsequently, the plaintiff filed a motion to dismiss the counterclaims alleged by both the Shinnecock tribal defendants and the Gumbs defendants pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**DISCUSSION**

## I.   Standards for Motions to Dismiss

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly

dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) when the district court lacks the statutory or
constitutional power to adjudicate it.")  In reviewing a motion
to dismiss under Rule 12(b)(1), the court "must accept as true
all material factual allegations in the [counterclaim], but we
are not to draw inferences from the [counterclaim] favorable to
plaintiffs."  J.S. ex. rel. N.S. v. Attica Cent. Schs., 386 F.3d
107, 110 (2d Cir. 2004).  A plaintiff (or, in this case,
counterclaimant) asserting subject matter jurisdiction has the
burden of proving by a preponderance of the evidence that it
exists.  Makarova, 201 F.3d at 113.  In deciding a Rule 12(b)(1)
motion to dismiss, the court may rely on and refer to evidence
outside the pleadings.  J.S., 386 F.3d at 110.

Similarly, under Rule 12(b)(6) of the Federal Rules of
Civil Procedure, a complaint may be dismissed "for failure of
the pleading to state a claim upon which relief can be granted."
Fed. R. Civ. P. 12(b)(6).  The court must "accept as true all
factual statements alleged in the [counterclaims] and draw all
reasonable inferences in favor of the non-moving party."
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007) (citation omitted).  "The issue is not whether a
[counterclaim] plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims."

<u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995) (quotations omitted).

Under Rule 12(b)(6), a trial court must determine whether the "[f]actual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the [counterclaims] are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the allegations in the counterclaims must meet the standard of "plausibility." <u>See</u> <u>id.</u> at 556-557, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). <u>Twombly</u> does not require that the complaint (or here, the counterclaims) provide "detailed factual allegations," however, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> Conclusory allegations "'will not suffice to prevent a motion to dismiss,'" <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002) (quoting <u>Gebhardt v. Allspect, Inc.</u>, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000), and the court need not accept as true mere "'conclusions of law or unwarranted deductions of fact.'" <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771

(2d Cir. 1994) (quoting 2A MOORE, JAMES WILLIAM & JO DESHA LUCAS,

Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed. 1984)); see

also Iqbal, 129 S.Ct. at 1950 ("[A] court considering a motion

to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to

the assumption of truth.")

Although, in the Rule 12(b)(6) context, the court is

"normally required to look only to the allegations on the face

of the [counterclaim]," it may also "consider documents . . .

that are attached to the [counterclaim] or incorporated in it by

reference . . . ." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.

2007).  Accordingly, in determining whether the Shinnecock

defendants have failed to state a cause of action in their

counterclaims, the court considers the allegations set forth in

the counterclaims, in addition to the plaintiff's complaint, as

the complaint is integral to the counterclaims, and the exhibits

appended to the counterclaims.  See id.; Fagan v.

AmerisourceBergen Corp., 356 F. Supp. 2d 198, 220 n.7 (E.D.N.Y.

2004).

**II.** **Rules 12(b)(1) and 12(b)(6) Motions to Dismiss the Gumbs Defendants' Counterclaims for Violations of New York General Business Laws and Interference with Prospective Advantage**

a. Counterclaims for Violations of New York General Business Laws

Plaintiff argues that the Gumbs defendants' counterclaims in their fourth and fifth causes of action, alleging violations of sections 349 and 350 of New York General Business Laws ("GBL"), should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Alternatively, plaintiff argues that these claims should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6).  Because the court agrees that it lacks subject matter jurisdiction over the Gumbs defendants' GBL counterclaims, it does not reach whether dismissal under Rule 12(b)(6) would be appropriate.

The court first considers whether these counterclaims are compulsory or permissive.  Counterclaims pursuant to Federal Rule of Civil Procedure 13(a) are considered compulsory and no independent basis of jurisdiction is needed for the court to adjudicate it, assuming there is federal jurisdiction over the main claim.  Harris v. Steinem, 571 F.2d 119, 121-22 (2d Cir. 1978).  Pursuant to Rule 13(a), a litigant must state "as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises

out of the transaction or occurrence that is the subject matter

of the opposing party's claim . . . ."  Fed. R. Civ. P. 13(a).

To determine whether a counterclaim is compulsory – i.e. whether

it arises out of the transaction or occurrence that is the

subject matter of the opposing party's claim, the Second Circuit

considers whether there is a "'logical relationship' between the

counterclaim and a main claim."  Jones v. Ford Motor Credit Co.,

358 F.3d 205, 209 (2d Cir. 2004).  "This inquiry is flexible and

'attempts to analyze whether the essential facts of various

claims are so logically connected that consideration of judicial

economy and fairness dictate that all the issues be resolved in

one lawsuit.'"  Computer Assocs. Int'l, Inc. v. Altai, Inc., 893

F.2d 26, 29 (2d Cir. 1990) (quoting Harris, 571 F.2d at 123).

     Non-compulsory, or permissive, counterclaims are

permitted pursuant to Fed. R. Civ. P. 13(b).  For the court to

exercise jurisdiction over a permissive counterclaim it must

have independent jurisdiction over the claim.  Harris, 571 F.2d

at 122.

     Here, plaintiff argues that the Gumbs defendants' GBL

counterclaims are non-compulsory and the defendants do not

contend otherwise.  (Pl.'s Mem. at 11; Defs.' Opp'n at 16-18.)

The court agrees that the GBL counterclaims are non-compulsory

and thus require an independent jurisdictional basis.  Although

the plaintiff's main claims and defendants' GBL counterclaims

allege violations of the same state laws, they present different "essential facts."  The Gumbs defendants' GBL counterclaims do not arise out of the same transaction or occurrence as the plaintiff's claims.  Nor will the factual issues presented by the Gumbs defendants' GBL counterclaims be resolved by a determination of whether these defendants violated the same laws based on the facts alleged by the plaintiff.  Jones, 358 F.3d at 209-210.  As a result, the court finds that the Gumbs defendants' GBL counterclaims are permissive.

In determining that these claims are permissive, the court next addresses whether there is an independent basis for jurisdiction.  As the plaintiff correctly notes, supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) provides the only possible basis for this court's jurisdiction over the Gumbs defendants' GBL claims.  Section 1367(a) provides, in relevant part, that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Thus, a court "has the power to exercise supplemental jurisdiction over state claims if they derive from 'a . . . nucleus of operative fact' common to the jurisdiction-conferring claim and if they 'are such that [the claimant] would ordinarily be expected to

try them all in one judicial proceeding . . . .'" <u>Burgess v.</u>
<u>Omar</u>, 345 F. Supp. 2d 369, 371 (S.D.N.Y. 2004) (alteration in
original).  Pursuant to 28 U.S.C. § 1367(c), a court may decline
to exercise jurisdiction pursuant to § 1367 in certain
circumstances.

Although, as the defendants note, the Gumbs
defendants' GBL claims allege false advertising and the
plaintiff's claims allege the same, the operative factual
nucleus of the GBL counterclaims is entirely different from the
plaintiff's claims.  The plaintiff's claims allege false
advertising of one specific item, "tax-free" cigarettes, whereas
the Gumbs defendants' counterclaims are based on allegations of
various types of false advertising regarding, <u>inter</u> <u>alia</u>, shelf
unit prices and stock-keeping unit prices, container weight,
quantity of product, product expiration dates, and the taxable
status of unspecified "items" sold by plaintiff's supermarkets.
Furthermore, there is nothing to suggest that the allegedly
false nature of the advertisements or the injury therefrom, as
alleged in the claims by the plaintiff and the counterclaiming
Gumbs defendants, are so related that they form part of the same
case or controversy.  The facts underlying the plaintiff's
claims will not even provide background for the facts underlying
the Gumbs defendants' GBL claims.  <u>See</u> <u>id.</u>  Although the claims
and counterclaims allege violations of the same state law, they

13

do not arise from a common nucleus of operative fact.
Therefore, the court does not have subject matter jurisdiction
over the Gumbs defendants' fourth and fifth causes of action
alleging claims under GBL sections 349 and 350, and they are
dismissed pursuant to Rule 12(b)(1).

    b. <u>Counterclaim for Interference with Prospective
Advantage</u>

    Plaintiff argues that the Gumbs defendants' sixth
cause of action for tortious interference with prospective
advantage should be dismissed for failure to state a claim
pursuant to Rule 12(b)(6), and for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1).  The court agrees that
dismissal is appropriate pursuant to Rule 12(b)(6).

    To state a claim for tortious interference with
prospective business advantage under New York law, a party must
allege: "(i) business relations with a third party; (ii) the
defendant's interference with those business relations; (iii)
that defendants acted with the sole purpose of harming the
plaintiff or used dishonest, unfair, or improper means; and (iv)
injury to the business relationship."  <u>Nadel v. Play-By-Play
Toys & Novelties, Inc.</u>, 208 F.3d 368, 382 (2d Cir. 2000).  An
allegation of an existing contract is not necessary, but the
claim must allege "interference with a specific identified
business relationship with a third party."  <u>Mobile Data Shred,</u>

Inc. v. United Bank of Switz., No. 99-CV-10315, 2000 U.S. Dist. LEXIS 4252, at *24 (S.D.N.Y. Apr. 5, 2000).  The counterclaim must allege that the counterclaim plaintiff interfered with the specific business relationships between the counterclaim plaintiff and third party.  Gianni Versace, S.P.A. v. Versace, No. 01-CV-9645, 2003 U.S. Dist. LEXIS 2587, at *5 (S.D.N.Y. Feb. 25, 2003) ("A properly pleaded counterclaim for this tort must allege relationships with specific third parties with which the respondent interfered.")  Thus, "[g]eneralized allegations of impairment to plaintiff's ability to attract new business will not suffice."  Mobile Data Shred, Inc., 2000 U.S. Dist. LEXIS 4252, at *24.  "That interference must be 'direct interference with a third party, that is, the [counterclaim] defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the [counterclaim] plaintiff.'"  Gianni Versace, S.P.A., 2003 U.S. Dist. LEXIS 2587, at *5-6 (quoting Black Radio Network, Inc. v. NYNEX Corp., No. 96-CV-4138, 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000).  Additionally, to sufficiently allege a defendant's intent, the plaintiff must allege acts specifically aimed at inducing a third party to discontinue its business relationship with plaintiff.  Mobile Data, 2000 U.S. Dist. LEXIS 4252, at *25 n. 10.

The Gumbs defendants' allegation of a business relationship with a third party with which plaintiff interfered is the "proposed contracts between the Gumbs Defendants and retail-sales customers." (Gumbs Defs.' Answer ¶ 130.) In its opposition to plaintiff's motion to dismiss, the Gumbs defendants further clarify that the business relations with which the plaintiff interfered was with "existing cigarette 'retail-sales customers.'" (Defs.' Opp'n at 20 (emphasis added).) Moreover, the Gumbs defendants' further allege that plaintiff intentionally and wrongfully interfered with the proposed contracts by the "commencement of the present action without cause and defamation," which resulted in damage to the Gumbs defendants when the contracts were not consummated. (Gumbs Defs.' Answer ¶¶ 130-133.) These allegations amount to nothing more than a "general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship." McGill v. Parker, 179 A.D.2d 98, 105, 582 N.Y.S.2d 91, 95 (1st Dep't 1992). Therefore, the Gumbs defendants have failed to allege a business relationship with a third party with sufficient specificity.

Moreover, the Gumbs defendants have not alleged any activity by plaintiff directed at the third-party customers. While the initiation of a civil law suit could constitute

improper conduct pursuant to New York law, <u>Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.</u>, 50 N.Y.2d 183, 191, 406 N.E.2d 445, 449, 428 N.Y.S.2d 628, 632 (1980), this act by plaintiff was directed solely at the Gumbs defendants, not third parties. Furthermore, the Gumbs defendants have not alleged any acts by plaintiff specifically aimed at inducing a third party to discontinue a relationship with them.

Finally, beyond bare conclusory allegations that, on a Rule 12(b)(6) motion, the court need not assume the truth of, the Gumbs defendants have not alleged facts supporting their allegation that the plaintiff filed the action with wrongful means or that the defendants suffered damages but for the plaintiff's conduct. Consequently, the Gumbs defendants' counterclaim for tortious interference with prospective business relations is dismissed for failure to state a claim under Rule 12(b)(6). Because the Gumbs defendants' counterclaims for tortious interference arise from "the commencement of the present action without cause", the court denies plaintiff's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### III. <u>Rule 12(b)(6) Motion to Dismiss the Shinnecock Tribal Defendants' Counterclaim for Abuse of Process</u>

Plaintiff seeks dismissal of the Shinnecock tribal defendants' fourth cause of action for abuse of process for

17

failure to state a claim under Rule 12(b)(6).  In New York, an abuse of process claim requires that a defendant "(1) employ[] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (citation omitted).  "[T]he gist of abuse of process is the improper use of process after it is regularly issued." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (citation omitted). Improper motive alone is insufficient for a claim of abuse of process.  Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 468-69, 469 N.E.2d 1324, 1326-27 (1984).

The Shinnecock tribal defendants allege in conclusory fashion that plaintiff used the discovery process to compel responses and production of certain documents from the defendants for the "ulterior purpose" of doing "harm, without economic or social excuse or justification." (Shinnecock Tribal Defs.' Answer ¶¶ 123-124.)  The Shinnecock tribal defendants allege that plaintiff maliciously sought "some collateral advantage or corresponding detriment to the Shinnecock . . . that is outside the legitimate ends of the process," in retribution for what plaintiff "views as unfair immunity from suit." (Id. at ¶ 125.)  They cite a December 7, 2007 Newsday

article wherein plaintiff allegedly remarked "that 'so-called sovereign immunity' is a 'veil of secrecy' that effectively allows the Shinnecock Tribal Defendants to operate in the shadows as a criminal enterprise." (Id.)

There is no specific allegation that the Newsday article is based on anything obtained through plaintiff's discovery requests. Although the Shinnecock tribal defendants do not explicitly assert that the discovery was sought and used by plaintiff for the improper purpose of defamation in the Newsday article, they allege that they suffered damages and incurred substantial legal fees in defending this action. (Id. at ¶ 126.) If the statements in the Newsday article are defamatory, as alleged by the Shinnecock defendants, they are necessarily untruthful. Therefore, to the extent that the Shinnecock tribal defendants may claim that the Newsday article was based on discovery improperly obtained from them, the court notes that the Shinnecock tribal defendants must explain whether the information they produced to the plaintiff in discovery was untruthful.

Plaintiff asserts that it served the Shinnecock tribal defendants with a first set of discovery on November 30, 2007, and a second set of discovery demands on January 25, 2008, and that the Shinnecock tribal defendants responded to the discovery, on unspecified dates, with "limited objections," but

never moved for a protective order.  (Pl.'s Mem. at 14.)
Indeed, the Shinnecock defendants did not avail themselves of
procedures for seeking relief and sanctions for discovery abuses
as provided by, inter alia, Federal Rules of Civil Procedure 26,
33, 34 and 37 and the Court's Local Civil Rules.

Plaintiff further notes that the discovery responses
of the Shinnecock tribal defendants were provided after the
allegedly defamatory Newsday article was published on December
7, 2007.  Nevertheless, the Shinnecock tribal defendants do not
allege how the plaintiff used the discovery process to obtain a
collateral objective.  The Shinnecock tribal defendants merely
allege the plaintiff was improperly motivated and that in the
Newsday article, plaintiff stated that "'so-called sovereign
immunity' is a 'veil of secrecy' that effectively allows the
Shinnecock Tribal Defendants to operate in the shadows as a
criminal enterprise." (Shinnecock Tribal Defs.' Answer ¶ 125.)
Additionally, the Shinnecock tribal defendants cannot show that
plaintiff's discovery requests were "without excuse or
justification" because they were, at least in part, for the
purpose of proceeding with the current action.  See, e.g.,
O'Brien v. Alexander, 898 F. Supp. 162, 168 (S.D.N.Y. 1995).
The Shinnecock tribal defendants have not alleged that the
discovery requests were unrelated to the issues raised in the
litigation.  See id.  As a result, the Shinnecock tribal

defendants' abuse of process claim is dismissed for failure to state a claim.

IV. **Rule 12(b)(6) Motion to Dismiss the Shinnecock Defendants' Defamation Counterclaims**

Under New York law, in order to state a claim for defamation, a plaintiff must allege: (1) a false and defamatory statement of fact, (2) concerning the plaintiff, (3) published without privilege or authorization to a third party by the defendant, (4) constituting fault as judged by, at a minimum, a negligence standard, and (5) causing special harm or constituting defamation per se. See, e.g., Salvatore v. Kumar, 45 A.D.3d 560, 562, 845 N.Y.S.2d 384, 388 (2d Dep't 2007); Fordham v. Islip Union Free School Dist., --- F. Supp. 2d ---, 2009 WL 2959613, at *6 (E.D.N.Y. Sept. 9, 2009).

The pleading standard for a defamation action brought in federal court is governed by Rule 8 of the Federal Rule of Civil Procedure,[1] which provides that "[e]ach allegation [of a pleading] must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). While the federal rules do not require the particularized pleading requirements set

---

[1] Contrary to the plaintiff's contention, the procedural pleading requirements are governed by Federal Rule of Civil Procedure 8, not New York Civil Practice Law & Rules § 3016. See Nickerson v. Commc'n Workers of America Local 1171, No. 04-CV-00875, 2005 WL 1331122, at *6 (N.D.N.Y. May 31, 2005). See also, Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (holding inapplicable New York's C.P.L.R. § 3016 to federal court exercising pendant jurisdiction in defamation action).

forth in New York's C.P.L.R. section 3016, see Geisler v.
Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980), Rule 8 still
requires that each pleading be specific enough to "'afford
defendant sufficient notice of the communications complained of
to enable him to defend himself.'"  Kelly, 806 F.2d at 45
(quoting Liguori v. Alexander, 495 F. Supp. 641, 647 (S.D.N.Y.
1980)).

    a. Statements in Court Pleadings

      Plaintiff argues that the counterclaims for defamation
in the Shinnecock defendants' first and second causes of action
should be dismissed for failure to state a claim under Rule
12(b)(6) because the allegations contained in the Second Amended
Complaint are absolutely privileged.  "Under New York law, 'in
the context of a legal proceeding, statements by parties and
their attorneys are absolutely privileged if, by any view or
under any circumstances, they are pertinent to the litigation.'"
O'Brien, 898 F. Supp. at 171 (quoting Grasso v. Mathew, 164
A.D.2d 476, 479, 564 N.Y.S.2d 576, 578 (3d Dep't 1991)). "An
action for libel or defamation will only lie where the statement
is 'so obviously [not pertinent] ... and so needlessly
defamatory as to warrant the inference of express malice.'"
First Indemnity of America Ins. Co. v. Shinas, No. 03-CV-6634,
2009 WL 3154282, at *11 (S.D.N.Y. Sept. 30, 2009) (quoting
Martirano v. Frost, 25 N.Y.2d 505, 508, 255 N.E.2d 693, 694, 307

N.Y.S.2d 425, 427 (1969)). The test for pertinency is "extremely broad," O'Brien, 898 F. Supp. at 171, and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." Grasso, 164 A.D.2d at 479, 564 N.Y.S.2d at 578. See also Kelly v. Albarino, 485 F.3d 664, 666 (2d Cir. 2007) ("[T]his is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege even though such matter may be ineffectual as a defense."); Sexter & Warmflash, P.C. v. Margrabe, 38 A.D.3d 163, 173, 828 N.Y.S.2d 315, 324 (1st Dep't 2007) ("To be actionable, a statement made in the course of judicial proceedings 'must be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame.'" (quoting Martirano, 25 N.Y.2d at 508, 255 N.E.2d at 694, 307 N.Y.S.2d at 427)).

The pertinence of a statement made in the course of judicial proceedings is a question of law for the court and any doubts are to be resolved in favor of pertinence. See Mosesson v. Jacob D. Fuchsberg Law Firm, 257 A.D.2d 381, 383, 683 N.Y.S.2d 88, 89 (1st Dep't 1999). "Pertinence is properly

determinable on a motion to dismiss addressed to the pleadings and documentary evidence alone."  Sexter & Warmflash, P.C., 38 A.D.3d at 173-74, 828 N.Y.S.2d at 324.

The Shinnecock defendants argue that the allegedly defamatory statements contained in the Second Amended Complaint[2] are not "material and pertinent" to the current proceedings and, therefore, are not absolutely privileged.  (Defs.' Opp'n at 1.) Specifically, they contend that the statements that the "Shinnecock Defendants place counterfeit tax stamps on cigarettes and sell [them] to teenagers without requiring identification" are not "pertinent" to plaintiff's claims under the Lanham Act or under the General Business Law.  (Defs.' Opp'n at 8-9.)  The Shinnecock defendants further contend that those statements, which they allege are only relevant to the dismissed claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), are out of context in the Second Amended Complaint. (Defs.' Opp'n at 4, 10.)

The court need only find that the statements made by plaintiff in the Second Amended Complaint have the "barest

---

[2]  Defendants take issue with the following statements contained therein: "defendants place counterfeit tax stamps on cigarettes that they sell in order to conceal that the sales originated from Indian retailer" and "[t]hese low-cost cigarettes are purchased by under-aged teenagers who do not show proof of age and who could not otherwise afford full-priced cigarettes." (Shinnecock Tribal Defs.' Answer ¶¶ 102, 108; Gumbs Defs.' Answer ¶¶ 98, 104.)

rationality, divorced from any palpable or pragmatic degree of probability," to the case. _Seltzer v. Fields_, 20 A.D.2d 60, 62, 244 N.Y.S.2d 792, 796 (1st Dep't 1963), _aff'd_ 14 N.Y.2d 624, 249 N.Y.S.2d 174, 198 N.E.2d 368 (1964). The statements at issue fall within this broad standard for "pertinency to litigation." As plaintiff contends, "the statements regarding the Shinnecock defendants' use of counterfeit stamps relate to the false advertising claims because "[c]ounterfeit stamps could constitute false advertising, misleading the consumer to believe that she was purchasing cigarettes in compliance with New York State tax law." (Pl.'s Reply at 4.) Likewise, the sale of untaxed or low-cost cigarettes to minors relate to the public harm element necessary for violations of the state law claims. Thus, the allegedly defamatory statements contained in the Second Amended Complaint are neither so utterly irrelevant to the issues in the case, nor so outrageously out of context to justify refusing to extend the absolute privilege to them.[3]

---

[3] Defendants fail to point the court to any case law to the contrary. The court's independent research reveals that the few cases refusing to extend the absolute privilege to statements made in a pleading about a party during the course of a judicial proceeding dealt with statements utterly irrelevant to the issues raised in the lawsuit. _See, e.g._, _Anonymous v. Trenkman_, 48 F.2d 571, 572-573 (2d Cir. 1931) (in a suit to set aside a compromise allegedly procured by fraud, allegation in pleadings that the plaintiff murdered the deceased was not privileged); _Lesser v. Int'l Trust Co._, 175 A.D. 12, 17, 161 N.Y.S. 624, 627-28 (1st Dep't 1916) (in a bankruptcy petition, allegation that the plaintiff was a "fugitive from justice" was not privileged);

Had the plaintiff published these allegations to a
non-party or made these statements on the courthouse steps, the
analysis might well be different.  Long v. Marubeni America
Corp., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005) ("'The privilege
is usually understood as not applying ... to out-of-court
statements made to persons not related to the litigation.'"
(quoting Rodney Smolla, Law of Defamation, § 8:9 at 8-12.4 (2d
ed. 2005))).  However, these statements were made in a second
amended complaint about certain of the defendants during the
course of a civil litigation.  Given the preference for
resolving the pertinence inquiry in favor of finding that the
privilege applies, the court finds the statements contained in
the Second Amended Complaint to be absolutely privileged.
Accordingly, the Shinnecock defendants' defamation claims,
Counts One and Two of the Shinnecock tribal defendants' and
Gumbs defendants' counterclaims, are dismissed for failure to
state a claim.  See, e.g., First Indemnity of America Ins. Co.,
2009 WL 3154282, at *11 (applying New York law and dismissing
defendant's counterclaims for defamation for failure to state a
claim where the allegedly defamatory statements were made in the
second amended complaint, and about matters pertinent to

---

Gilbert v. People, 1 Denio 41, 44 (N.Y. Sup. Ct. 1845) (in a
trespass action, allegation in complaint that the defendant was
"in the habit of biting sheep" and that, if guilty, defendant
"ought to be hanged or shot" was not privileged).  The facts of
those cases are not analogous to the facts presented here.

plaintiffs' action); Regan v. Coldwell Banker Residential Real
Estate Servs., Inc., 176 A.D.2d 864, 865, 575 N.Y.S.2d 887, 889
(2d Dep't 1991) (affirming grant of summary judgment and
dismissal of complaint where it could not be said that
statements were so unrelated to, or out of context with,
underlying causes of action so as to indicate that statements
were motivated solely by desire to defame).

b. Statements in the Newsday Article and in the House
   Report

Plaintiff additionally argues that the Shinnecock
defendants' counterclaims for defamation in their third cause of
action based on statements contained in a report by United
States Representative Peter T. King, of the United States House
Committee on Homeland Security, entitled Tobacco and Terror: How
Cigarette Smuggling is Funding our Enemies Abroad ("House
Report"), and statements contained in a Newsday article by Keiko
Morris, entitled Dismissal of Indian Smokeshop Suit Still Burns
("Newsday article"), should be dismissed for failure to state a
claim under 12(b)(6).  Each will be taken in turn.

i.  House Report

The Shinnecock defendants' third counterclaims for
defamation allege, in part, that "on or about April 15, 2008,
the Plaintiff published to, inter alia, the republican staff of
Peter T. King the statement that the Shinnecock Tribal
Defendants [and the Gumbs Defendants] 'funnel[] money to

international terror groups . . . .'" (Shinnecock Tribal Defs.'
Answer ¶ 116; Gumbs Defs.' Answer ¶ 112.)  The counterclaims
further allege that plaintiff maliciously published this
defamatory and false statement about the Shinnecock defendants,
exposing them to "public hatred, contempt, ridicule, or
disgrace" and causing them to suffer financial harm.
(Shinnecock Tribal Defs.' Answer ¶¶ 117-122; Gumbs Defs.' Answer
¶¶ 113-118.)  The court orders that these defamation
counterclaims should be dismissed for failure to state a claim
under Rule 12(b)(6) because the allegedly defamatory statement
is neither attributable to plaintiff nor "of and concerning" the
Shinnecock defendants.

        While, on its face, the counterclaims state a cause of
action for defamation, the House Report (which is attached an
exhibit to both Answers) contradicts the allegations in the
counterclaims.  See Church of Scientology Int'l v. Time Warner,
Inc., 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992) (a court may
consider the allegedly defamatory article in assessing the
sufficiency of a libel complaint); see also Salvatore, 45 A.D.3d
at 563, 845 N.Y.S.2d at 388 ("While the allegations in the
complaint are to be accepted as true when considering a motion
to dismiss . . . , 'allegations consisting of bare legal
conclusions as well as factual claims flatly contradicted by
documentary evidence are not entitled to any such

consideration.'" (quoting Garber v. Board of Trustees of State
Univ. of N.Y., 38 A.D.3d 833, 834, 834 N.Y.S.2d 203, 204-05 (2d
Dep't 2007))); Deronette v. City of New York, No. 05-CV-5275,
2007 WL 951925, at *2 (E.D.N.Y. Mar. 27, 2007) (on a motion to
dismiss, "'a court need not feel constrained to accept as truth
conflicting pleadings . . . that are contradicted either by
statements in the complaint itself or by documents upon which
its pleadings rely, or by facts of which the court may take
judicial notice.'" (quoting In re Livent, Inc. Noteholders Sec.
Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001))).

### a) "Attributable to" Requirement

First, the counterclaims fail to sufficiently aver
that the allegedly defamatory statement in the House Report is
attributable to the plaintiff.  In order to be liable for the
publication of a defamatory statement, a defamation defendant
(or person authorized to act on behalf of the defendant) must
make the statement or authorize its republication or
recommunication.  See, e.g., 43A N.Y. Jur. 2d Defamation and
Privacy § 91 (2009).

Contrary to the conclusory allegation in the
counterclaims, there nothing in the House Report itself to
indicate that the statement at issue was attributable to the

plaintiff. The plaintiff did not author the House Report,[4] nor is plaintiff quoted, cited or otherwise referenced in connection with the allegedly defamatory statement, or at any other point in the House Report. The counterclaims do nothing to explain this discrepancy; the counterclaims do not identify which officer or agent of plaintiff allegedly "published" this statement to Mr. King, specify how the statement was "published" (i.e. whether the statement was spoken or written) or allege <u>any</u> circumstance that would give rise to the inference that the statement in the House Report is attributable to the plaintiff. <u>See, e.g.</u>, <u>Grieve v. Barclays Capital Sec. Ltd.</u>, No. 602820/1998, 1999 WL 1680654, at *5 (N.Y. Sup. Ct. Sept. 10, 1999) (on motion to dismiss, finding statements in articles not attributable to defendant where articles did not set forth their sources or the precise statements allegedly made by defendants.)

To the extent the Shinnecock defendants are arguing that plaintiff was the source of the information contained in the allegedly defamatory statement, they have not alleged the plaintiff was responsible for the statement's republication in the House Report. <u>See</u> <u>Hoffman v. Landers</u>, 146 A.D.2d 744, 747 (2d Dep't 1989) ("One who makes a defamatory statement is not

---

[4] Indeed, the Report was prepared by United States Representative, Peter T. King, ranking member of the Republican Staff of the U.S. House Committee on Homeland Security. Mr. King is not a party to this action or named as a defendant to the defamation counterclaims.

responsible for its recommunication without his authority or request by another over whom he has no control.").[5]  Thus, the defamation counterclaims do not sufficiently allege that the statement at issue in the House Report is attributable to the plaintiff.

### b) "Of and Concerning" Requirement

Furthermore, reading the House Report as a whole, there is nothing to indicate that the allegedly defamatory statement concerns any of the Shinnecock defendants as a matter of law.

In order to withstand a motion to dismiss, a plaintiff must "advance[] colorable claims of having been identified and described by the defamatory comment."  Geisler, 636 F.2d at 640. The "of and concerning" requirement "stands as a significant

_____

[5] Apparently realizing the failure of their counterclaims, the Shinnecock defendants first argue that the statement in the House Report must be attributable to the plaintiff because of its similarity to allegations in the original complaint. (Defs.' Opp'n at 14.)  They then argue that the instant statement "appears" to be attributable to plaintiff because the House Report contains a New York Post advertisement for duty-free cigarettes identical to one plaintiff produced in discovery.  (Defs. Opp. at 14-15.)  However, as the defendants did not include these allegations in their counterclaims, the court will not consider these arguments on the motion to dismiss.  See, e.g., Telectronics Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832, 836 (S.D.N.Y. 1988)  ("In considering a Rule 12(b)(6) motion, the court should confine its inquiry to the pleadings.  A claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984)).

limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them." Kirch v. Liberty Media Corp., 449 F.3d 388, 399-400 (2d Cir. 2006).

Although the counterclaims allege that the plaintiff singled out the "Shinnecock Tribal Defendants" and the "Gumbs Defendants" as entities that funnel money to international terrorists groups, (see Shinnecock Tribal Defs.' Answer ¶ 116; Gumbs Defs.' Answer ¶ 112), the House Report does not refer to any member of the Shinnecock defendants by name or by innuendo, nor does the House Report contain photographs of any of the Shinnecock defendants. Instead, the House Report generally refers to "Native Americans," "Native American Indian reservations, "New York's Indian reservation smoke shops," and "New York Indian Reservations" and specifically refers to "Rodney Morrison," the "Unkechaug Nation" and the "Seneca Nation of Indian's Cattaraugus reservation (NY)." (Shinnecock Tribal Defs.' Answer, Ex. B, at 2, 3, 6, 7, 9.) The Shinnecock defendants argue that, even though they are not specifically referenced in the House Report, a jury should be able to consider the House Report as a whole and to determine whether the "of and concerning" requirement has been met. (Defs.' Opp'n at 13-14.)

"Although the 'of and concerning' requirement generally presents a factual question for the jury, 'the Court properly may dismiss an action pursuant to Rule 12(b)(6) where the statements are incapable of supporting a jury's finding that the allegedly libelous statements refer to [counterclaimant].'" Diaz v. NBC Universal, Inc., 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (quoting Church of Scientology Int'l v. Time Warner, Inc., 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992)). See also Cardone v. Empire Blue Cross and Blue Shield, 884 F. Supp. 838, 847 (S.D.N.Y. 1995) ("whether the complaint alleges facts sufficient to demonstrate a reasonable connection between the [counterclaimant] and the alleged libel is a question for the court.") When determining whether the "of and concerning" requirement has been sufficiently pled, the court must consider "whether those who know the plaintiff, upon reading the statements, would understand that the plaintiff was the target of the allegedly libelous statement." Church of Scientology Int'l, 806 F. Supp. at 1160. See also Giaimo v. Literary Guild, 79 A.D.2d 917, 917, 434 N.Y.S.2d 419, 419 (1st Dep't 1981) ("Where the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him, that the language used be such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining.")

While the reference to the defamed party "may be indirect and may be shown by extrinsic facts," the burden on the plaintiffs "is not a light one." <u>Chicherchia v. Cleary</u>, 207 A.D.2d 855, 855-56, 616 N.Y.S.2d 647, 648 (2d Dep't 1994) (affirming motion to dismiss defamation counterclaim). Where extrinsic facts are relied upon to prove indirect reference, the party alleging defamation "must show that it is reasonable to conclude that the publication refers to him or her and the extrinsic facts upon which that conclusion is based were known to those who read or heard the publication." <u>Id.</u> at 856, 616 N.Y.S.2d at 648.

In the instant case, the counterclaims do not set forth circumstances from which to infer that any of the Shinnecock defendants might be understood to have been the subject of the alleged defamatory statement in the House Report. Nor is there anything in the House Report itself to indicate that the House Report is directly or impliedly referring to any of the Shinnecock defendants. To the contrary, the House Report focuses on the link between cigarette smugglers and the funding of international terrorists groups. Specifically, it discusses how illicit tobacco trade has become a lucrative smuggling operation in the United States, "dominated by tight-knit, nationally-based networks, primarily families through blood or marriage of Lebanese, Yemeni, Jordanian, and Palestinian

descent", who, in New York State, "rely primarily on access to the Native American Indian reservations for tax-free cigarettes . . ." (Shinnecock Tribal Defs.' Answer, Ex. B at 3.) The House Report concludes that New York's failure to stop this illicit tobacco trading implicates national security, since "some of these [smuggling] rings are now funneling money to international terror groups." (Id. at 12.) At best, the House Report blames the funneling of money to international terror groups on the specific international networks that obtain untaxed cigarettes from some Native American Indian reservations and smoke shops, some of which are located in New York.

Moreover, there are no textual cues in the House Report causing the reader to infer that the statement concerned the Shinnecock defendants. Neither the plaintiff nor any of the Shinnecock defendants are named or referred to in the House Report. As discussed supra, the plaintiff is not quoted, cited to or otherwise referenced in the House Report. Likewise, while the House Report names specific tribes and specific individuals within those tribes, at no time does it name or allude to any of the Shinnecock defendants. See, e.g., Cardone, 884 F. Supp. at 847 (noting absence of executive plaintiff's name in allegedly defamatory press releases specifically mentioning other executives). Furthermore, the House Report makes no reference to the instant case, foreclosing the possibility that a reader

would relate the defendants in this action to the "smuggling rings" funneling money to terrorists by reference.  Thus, in order to find that the House Report was targeting the Shinnecock defendants, a reader would have to assume that, of the large population of Native American Indian reservations and smoke shops of New York, the specific Shinnecock defendants were members of the subset of smuggling rings that reportedly funnel money to the international terror groups.  The counterclaims aver no extrinsic facts that would point a reader to this conclusion.

Taking allegations in the Second Amended Answers as true and considering those allegations in conjunction with the entirety of the House Report, the court finds that those who know the Shinnecock defendants would not know that they were the target of the allegedly libelous statement.  See, e.g., Salvatore, 45 A.D.3d at 563, 845 N.Y.S.2d at 388 (finding defamation claim properly dismissed for failure to state a claim where, inter alia, "plaintiffs failed to show that readers of the Report, which does not identify them by name but instead refers generally to certain 'executives and personnel' would be able to discern from the facts referred to in the Report that any defamatory statements were 'of and concerning' them"); Algarin v. Town of Wallkill, 421 F.3d 137, 139 (2d Cir. 2005) (affirming motion to dismiss in "stigma plus" case where

complaint failed to "set forth circumstances from which to infer
the identity of particular officers who might be understood to
have been the subject of any defamatory allegations in the
Report" and court found it "impossible to directly tie any of
the statements in the House Report to individual officers . . .
without information not contained in the Report").  See also
Morgenstern v. County of Nassau, No. 04-CV-0058, 2008 WL
4449335, at *21 (E.D.N.Y. Sept. 29, 2008) (granting summary
judgment on defamation claim with respect to New York Times
article where allegedly defamed party was neither named or
clearly identifiable in the article and where none of alleged
defamers were quoted or cited for the comment in the article).

        To the extent the counterclaims can be interpreted to
allege that the Shinnecock defendants have been defamed as
members of a larger group that has been defamed (i.e.  New York
Indian reservations and smoke shops),[6] the group libel doctrine
requires dismissal of the counterclaims.  Allegations that an
individual plaintiff has been defamed as a member of a group are
insufficient to plead the "of and concerning" element unless the
group or class is sufficiently small or circumstances otherwise
indicate that the publication particularly refers to an
individual plaintiff.  See, e.g., Church of Scientology Int'l,

_____

[6] Quite the opposite, the counterclaim specifically alleges that
the plaintiffs defamed the "Shinnecock tribal defendants" and
the "Gumbs defendants".

806 F. Supp. at 1160; 44 N.Y. Jur. 2d Defamation and Privacy § 208 (2009). The Shinnecock defendants have made no allegations that the groups referred to in the House Report are so small that the allegedly defamatory statement can reasonably be understood to refer to them, nor do they allege circumstances of the publication that otherwise reasonably give rise to the conclusion that there is a particular reference to them. Therefore, the counterclaims are insufficient to withstand a motion to dismiss. See, e.g., Lines v. Cablevision Sys. Corp., No. 04-CV-2517, 2005 WL 2305010, at *5 (E.D.N.Y. Sept. 21, 2005) (dismissing defamation claim on motion to dismiss under group libel doctrine where "Plaintiff cannot demonstrate that [defendant's] citation to '14 AMC employees' reasonably gives rise to the conclusion that it particularly referenced Plaintiff"); Anyanwu v. Columbia Broad. Sys., Inc., 887 F. Supp. 690, 692-93 (S.D.N.Y. 1995) (dismissing group libel claim based on statements concerning class of Nigerians engaged in business with the United States).

Considering the allegations in conjunction with entirety of the House Report, there is nothing to indicate that the allegedly defamatory statement in the House Report is attributable to the plaintiff or that the statement concerns the Shinnecock defendants as a matter of law. The defamation counterclaims based on the House Report are therefore dismissed.

ii.  Newsday Article

The Shinnecock defendants' counterclaims in the third cause of action additionally allege defamation based on statements made in a December 7, 2007 Newsday article.  The counterclaims allege that plaintiff made the following three defamatory statements: (1) the Shinnecock defendants are "'[dis]honest business people . . . with black market cigarettes . . . '; (2) that hide in a 'veil of secrecy . . . under the cloak of so-called sovereign immunity . . . .' in order to engage in illegal activity";[7] and (3) the Shinnecock defendants are "'complicit in funding terrorists and gangs.'"  (Shinnecock Tribal Defs.' Answer ¶¶ 114-115; Gumbs Defs.' Answer ¶¶ 110-111.)  The counterclaims further allege that plaintiff maliciously published these defamatory and false statements about the Shinnecock defendants, exposing them to "public hatred, contempt, ridicule, or disgrace" and causing them to suffer financial harm.  (Shinnecock Tribal Defs.' Answer ¶¶ 117-122; Gumbs Defs.' Answer ¶¶ 113-118.)

In order to fairly evaluate the first allegedly defamatory statement contained in the Newsday article, the relevant paragraph from the article must be set forth in full:

_____

[7] The Gumbs defendants allege that "Plaintiff stated . . . that the Tribal Defendants are '[dis]honest business people . . . with black market cigarettes . . . ."  (Gumbs Defs.' Answer ¶¶ 110-111.)  They do not allege that the reference to sovereign immunity is defamatory.

Gristede's attorney, William Wachtel, said
Catsimatidis[8] would have preferred if the city, state
and federal governments "did their jobs in protecting
the interest of honest business people faced with
black market cigarettes being sold in front of their
stores." Catsimatidis is, however, dedicated to
pursuing the remaining claims, Wachtel said.

(Shinnecock Tribal Defs.' Answer, Ex. A at 2.)

A threshold issue for the court is whether the

statement allegedly causing injury to the plaintiff is

"reasonably susceptible to the defamatory meaning imputed to

it." Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997). The

New York Court of Appeals has defined a defamatory statement as

one that "exposes an individual 'to public hatred, shame,

obloquy, contumely, odium, contempt, ridicule, aversion,

ostracism, degradation, or disgrace, or . . . induce[s] an evil

opinion of one in the minds of right-thinking persons, and . . .

deprives one of . . . confidence and friendly intercourse in

society.'" Celle v. Filipino Reporter Enter., 209 F.3d 163, 177

(2d Cir. 2000) (quoting Kimmerle v. New York Evening Journal,

262 N.Y. 99 (1933)). To determine whether a statement is

defamatory, the court "must give the disputed language a fair

reading in the context of the publication as a whole." Id. The

court should "not strain to place a particular interpretation on

the published words," James v. Gannett Co., 40 N.Y.2d 415, 420,

---

[8] John Catsimatidis is the owner, president, chairman and CEO of
Gristede's Foods.

353 N.E.2d 834, 838, 386 N.Y.S.2d 871, 874 (1976), nor

"interpret such writings 'in their mildest and most inoffensive

sense to hold them nonlibelous.'" November v. Time, Inc., 13

N.Y.2d 175, 178, 194 N.E.2d 126, 128, 244 N.Y.S.2d 309, 311

(1963) (quoting Mencher v. Chesley, 297 N.Y. 94, 99, 75 N.E.2d,

257, 259 (1947)).  If the statement in question is reasonably

susceptible to more than one interpretation, one of which is not

defamatory, "it is then for the trier of fact, not for the court

acting on the issue solely as a matter of law, to determine in

what sense the words were used and understood." Davis v. Ross,

754 F.2d 80, 82 (2d Cir. 1985).

The court initially notes that the Shinnecock

defendants' distortion of quotations in their counterclaims

changes the fair meaning of the statement actually contained in

the Newsday article.  Mr. Wachtel does not state that the

Shinnecock defendants are dishonest.  Nor does Mr. Wachtel's

reference to "honest business people" reasonably lead to an

inference that the Shinnecock defendants are "[dis]honest

business people." (Shinnecock Tribal Defs.' Answer ¶ 114; Gumbs

Defs.' Answer ¶ 110.)

The only aspect of the quoted passages capable of a

defamatory meaning is the reference to the sale of cigarettes on

the black market.  Although Mr. Wachtel does not specifically

state that the Shinnecock defendants supply cigarettes to the

black market, the article is about the instant lawsuit and quotes certain of the Shinnecock defendants throughout. Considering the context of the entire article, a reader could infer that the Shinnecock defendants supply cigarettes to black market sellers. "'A charge of corrupt or criminal conduct is clearly sufficient to sustain an action for libel.'" Kelly, 806 F.2d at 47. Thus, the implication that the Shinnecock defendants supply cigarettes to black market sellers is "reasonably susceptible" to a defamatory meaning because "the ordinary reader" might well read these words as accusing the Shinnecock defendants of engaging in a corrupt or criminal activity.

However, Mr. Wachtel's statement is protected by New York's statutory privilege for publication of a fair and true report of judicial proceedings under N.Y. Civil Rights Law section 74. Section 74 of the Civil Rights Law provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding". This privilege has been extended to "comments made by attorneys to the press in connection with representation of their clients." McNally v. Yarnall, 764 F. Supp. 853, 856 (S.D.N.Y. 1991).

Allegedly libelous statements fall "within the privilege conferred by § 74 where 'it appears that all of the statements published by the defendants are of and concerning the complaint in the underlying federal litigation, and constitute substantially accurate descriptions or characterizations of such complaint.'" Id. (quoting Martin v. Beigel, 15 Med. L. Rptr. 2661, 2663 (Sup. Ct. Columbia Cty. 1988). The report is not required to use the same words as the pleadings to convey the substance of the judicial proceeding and "[t]he challenged language . . . 'should not be dissected and analyzed with a lexicographer's precision.'" Idema v. Wager, 120 F. Supp. 2d 361, 369 (S.D.N.Y. 2000) (quoting Becher v. Troy Publ'g Co., Inc., 183 A.D.2d 230, 234, 589 N.Y.S.2d 644, 646 (3rd Dep't 1992)). However, if the report suggests misconduct more serious than that alleged in the judicial proceeding on which the report is based, the privilege does not apply as a matter of law. Fuji Photo Film U.S.A., Inc. v. McNulty, --- F. Supp. 2d ----, 2009 WL 3754359, at *3 n.29 (S.D.N.Y. Nov. 4, 2009) (citing Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 436, 630 N.Y.S.2d 18, 22 (1st Dep't 1995). The privilege will also not attach if the judicial proceeding was maliciously instituted for the sole purpose of circulating the defamatory statement (the "Williams exception"). See Williams v. Williams, 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333 (1969). In the end, it is for

the court to determine as a matter of law if a publication is a "fair and true" report under section 74, unless the court determines that an issue of fact remains.  See Karp v. Hill & Knowlton, Inc., 631 F. Supp. 360, 363 (S.D.N.Y. 1986) (citation omitted).

Here, Mr. Wachtel's statement falls within the absolute privilege conferred by section 74 of New York's Civil Rights law.  The Newsday article, entitled "Dismissal of Indian Smoke Shop Suit Still Burns," describes both parties' reactions to the district court's dismissal of some of the plaintiff's claims and specifically identifies Mr. Wachtel as the plaintiff's attorney.  In reaction to the unfavorable news that some of his client's claims had been dismissed, Mr. Wachtel criticizes the city, state and federal governments for not policing black market cigarette sales and states that his client is "dedicated to pursuing the remaining claims."  (Shinnecock Tribal Defs.' Answer, Ex. A at 2.)  As discussed supra, Mr. Wachtel's statement could be read to imply that the Shinnecock defendants are involved in supplying untaxed cigarettes to the black market.  However, this suggestion is identical to the allegations in the underlying litigation.  For example, the original complaint – which was the only filed with the court at the time Mr. Wachtel made his statement to Newsday – specifically alleges that the Shinnecock defendants (among other

defendants) were "major suppliers of the black market" who "assist the black market sellers to evade federal and state income taxes" and "creat[e] and sustain[] black market sales of under-priced cigarettes." (Compl. ¶¶ 28, 30, 34.) Moreover, Mr. Wachtel's statement does not imply that Shinnecock defendants engaged in any misconduct other than that already alleged in the complaint. If anything, the allegations in the complaint detail defendants' role in the black market far more explicitly than Mr. Wachtel's statement in the Newsday article. Thus, a comparison of the statement in the Newsday article to the allegations in the complaint shows Mr. Wachtel was "merely restating his client's position" in the action. McNally, 764 F. Supp. at 856 (finding attorney's statement fell within section 74 where "[t]he alleged statements appeared in an article that gave balanced treatment to both sides of the controversy and clearly identified Stern as [defendant's] lawyer."). See Lacher v. Engel, 33 A.D.3d 10, 17, 817 N.Y.S.2d 37, 42 (1st Dep't 2006) (finding that an attorney's statement in an article that his client was "poorly served by a member of [the legal] profession to whom duty came well after other aims and interests" was a fair and true report of the malpractice action filed against the client's former attorney (alteration in original)); The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F. Supp. 555, 561 (S.D.N.Y. 1976) (comparing attorney's statements

in article to complaint and finding statements in article to be a fair and true report of the complaint).

The Shinnecock defendants argue that even if the statements are considered to be a fair and true reporting of the judicial proceedings, they fall under the <u>Williams</u> exception and are not privileged. (<u>See</u> Defs.' Opp'n at 16.) First, there are no allegations in the counterclaims that the plaintiff initiated this lawsuit solely for the purpose of later defaming the plaintiff. <u>See, e.g.</u>, <u>Fuji Photo Film U.S.A., Inc.</u>, 2009 WL 3754359, at *5 (finding counterclaim insufficient to invoke the <u>Williams</u> exception to the section 74 privilege where counterclaimant failed to allege that complaint was filed maliciously and for the sole purpose of defaming counterclaimant); <u>Riel v. Morgan Stanley</u>, No. 06-CV-524, 2007 WL 541955, at *12 (S.D.N.Y. Feb. 16, 2007) ("New York courts have consistently held that the <u>Williams</u> exception is a narrow one and does not apply 'in the absence of any allegation that the ... action was brought maliciously and solely for the purpose of later defaming the plaintiff.'" (citation omitted) (quoting <u>Branca v. Mayesh</u>, 101 A.D.2d 872, 873, 476 N.Y.S.2d 187, 189 (2d Dep't 1984))). Furthermore, there are no allegations in the counterclaims that Mr. Wachtel's statement was anything other than a response to a media inquiry about the dismissal of the counterclaims. <u>See, e.g.</u>, <u>Silver v. Kuehbeck</u>, No. 05-CV-35,

2005 WL 2990642, at *15 (S.D.N.Y. Nov. 7, 2005).  Thus,  Mr.

Wachtel's statement is absolutely privileged under section 74.

Next, the court turns to second challenged statement

in the Newsday article, which allegedly states that the

"Shinnecock tribal defendants hide in a 'veil of secrecy . . .

under the cloak of so-called sovereign immunity . . . .' in

order to engage in illegal activity."  (Shinnecock Tribal Defs.'

Answer ¶ 114.)  The referenced paragraph, as set forth in full,

states:

> "It's a rare day that cases against Indian
> tribes are allowed to move forward" into the
> discovery process, Wachtel said. "There's a
> veil of secrecy that has been, to date,
> successfully imposed by the Indian tribes
> under the cloak of so-called sovereign
> immunity, but a multibillion dollar industry
> which involves the sale of untaxed
> cigarettes should not be something that the
> public is kept in the dark about."

(Shinnecock Tribal Defs.' Answer, Ex. A at 2.)

Setting aside the Shinnecock tribal defendants'

distortion of Mr. Wachtel's quoted statements, the court does

not find Mr. Wachtel's statements in the Newsday article to be

actionable.  First, Mr. Wachtel's statement that the invocation

of the doctrine of sovereign immunity by Indian tribes, such as

the Shinnecock, often prevents cases against them from moving

into the discovery phase is a true statement, and therefore non-

actionable.  See, e.g., Guccione v. Hustler Magazine, Inc., 800

47

F.2d 298, 301 (2d Cir. 1986) ("[t]ruth is an absolute,
unqualified defense to a civil defamation action.")
Furthermore, Mr. Wachtel's implication that the Indian tribes'
invocation of the "cloak of . . . sovereign immunity" as a
defense had prevented the instant case from moving forward was a
fair and accurate report of judicial proceedings.  See, e.g.,
Silver, 2005 WL 2990642, at *16 (finding attorney's statement to
be "a substantially accurate account of his client's position in
the litigation").  At the time Mr. Wachtel made the statement,
certain of the Shinnecock defendants had raised sovereign
immunity as a defense to the action.  (See Doc. Nos. 19, 75;
Doc. Order 11/20/07.)  To the extent that the Shinnecock tribal
defendants take issue with Wachtel's characterization of Indian
tribal immunity as "so-called sovereign immunity," the court
reminds these defendants that, at the time of this statement up
until the present, the immunity of the Shinnecock has been and
remains an open question.

        The remainder of the paragraph, which consists of Mr.
Wachtel's editoralization that the doctrine of sovereign
immunity provides a "cloak" and "veil of secrecy" for "a
multibillion dollar industry which involves the sale of untaxed
cigarettes should not be something that the public is kept in
the dark about", is a non-actionable statement of opinion.  See,
e.g., Chandok v. Klessig, --- F. Supp. 2d ---, 2009 WL 2762167,

48

at *7 (N.D.N.Y. Aug. 27, 2009) ("Statements of opinion are neither actionable under New York law, nor under the U.S. Constitution.")  Whether a statement is one of opinion or fact is a question of law.  See Davis, 754 F.2d at 85.  In determining if a statement is an opinion, and thus not actionable as defamation, a court must consider: 1) whether the statement has a precise meaning or is ambiguous; 2) whether the statement is capable of being proven true or false; and 3) whether the statement, when taken in the "full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact."  Gross v. New York Times Co., 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813, 817, 623 N.E.2d 1163, 1167 (1993) (internal quotations omitted).  The dispositive inquiry is "whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff."  Id. at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167 (alterations in original).

Mr. Wachtel's comments, when taken in the context of the entire article and the social context of the circumstances, would signal readers that what is being read is likely to be opinion, not fact.  As discussed previously, the Newsday article presents a balanced view of the parties' reaction to the

district court's dismissal of certain of the plaintiff's claims.[9]
Mr. Wachtel, who is clearly identified as plaintiff's attorney,
made this statement in the face of such dismissal.  As such, his
statement "could reasonably have been understood only as an
effort to put the best face on an unfavorable [district court]
ruling."  Karp, 631 F. Supp. at 365.  Readers of the article
"would clearly have understood [Wachtel's] statements as a
defensive salvo in this ongoing [legal] battle."  Id. ("'[E]ven
apparent statements of fact may assume the character of
statements of opinion ..., when made in public debate, heated
labor dispute, or other circumstances in which an audience may
anticipate efforts by the parties to persuade others to their
positions by use of epithets, fiery rhetoric or
hyperbole . . .'") (quoting Info. Control Corp. v. Genesis One
Computer Corp., 611 F.2d 781, 784 (9th Cir. 1980)).  Although
accusations of criminal activity, even if stated as opinion, are
actionable, see Cianci v. New Times Publ'g Co., 639 F.2d 54, 64
(2d Cir. 1980), as demonstrated above, the alleged implied
accusation that the Shinnecock defendants are selling untaxed
cigarettes is absolutely privileged under section 74, as it does

---

[9] For example, the article states that the defendants "view the
suit as a publicity stunt orchestrated by Gristede's chief
executive, John Catsimatidis, who is considering a run for mayor
of New York in 2009" and quotes Lance Gumbs as stating, "we have
enormous legal bills we have to pay to prove that [Catsimatidis]
was absolutely out of his mind . . .."  (Shinnecock Tribal
Defs.' Answer, Ex. A at 1.)

not imply the Shinnecock tribal defendants engaged in misconduct other than that alleged in the complaint. "Thus, the general statement of opinion, even if it includes this subsidiary concept, is still immune to a defamation action." <u>Easton v. Public Citizens, Inc.</u>, No. 91-CV-1639, 1991 WL 280688, at *8 (S.D.N.Y. Dec. 26, 1991).

The court finally turns to the third allegedly defamatory statement in the <u>Newsday</u> article that the Shinnecock defendants are "complicit in funding terrorists and gangs." (Shinnecock Tribal Defs.' Answer ¶ 1115; Gumbs Defs.' Answer ¶ 111.) Again, in order to evaluate the sufficiency of this claim, the allegedly offending paragraph must be set forth in full. The paragraph states, "Gristede's made harsh charges in the lawsuit, filed last year in [the] U.S. District Court for the Eastern District, describing the smoke shops as black-market suppliers undercutting Gristede's supermarket chain by more than $20 million and as being complicit in funding terrorists and gangs." (Shinnecock Tribal Defs.' Answer, Ex. A, at 2.)

The defamation counterclaims as to this third statement in the <u>Newsday</u> article must also be dismissed for failure to state a claim under 12(b)(6). First, plaintiff correctly argues that this is not a statement made by or attributed to the plaintiff. Instead, the language is a direct quotation from the <u>Newsday</u> article, authored by Keiko Morris,

who is not named as a defendant in the counterclaims.  Ms.
Morris, in turn, attributes the content of the paragraph to the
complaint filed by plaintiff in the instant case, which
subsequently became part of the court record available to the
public.  The counterclaim does not allege that the plaintiff
sought out Ms. Morris or Newsday in order to publicize the
allegations of their complaint or that the plaintiff republished
the complaint to Ms. Morris or to another third party outside
the course of the judicial proceeding.  Therefore, this
allegedly defamatory statement in the Newsday article is not
attributable to the plaintiff.  As a result, the Shinnecock
defendants cannot sustain a cause of action as to this
statement.  See, e.g., Cipolla v. County of Rensselaer, 129 F.
Supp. 2d 436, 458 (N.D.N.Y. 2001) (finding defendants not liable
for newspaper's republication of their allegedly defamatory
statements "because [d]efendants themselves did not repeat the
statements (outside of the judicial proceedings).")

        To the extent that Shinnecock defendants are
attempting to challenge the statements made in the original
complaint itself, they are time-barred by C.P.L.R. § 215(3).[10]
The court will not allow the Shinnecock defendants to use
Newsday's republication of a statement contained in the original

---

[10] The complained of language was eliminated from the both First
and Second Amended Complaints.

complaint as an end run-around of the one-year statute of limitations presented by C.P.L.R. § 215(3).

As a result, the Shinnecock defendants' counterclaims for defamation based on the statements contained in the House Report and the <u>Newsday</u> article are dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## V.    Rule 12(b)(6) Motion to Dismiss the Shinnecock Defendants' Prima Facie Tort Counterclaims

Finally, plaintiff seeks dismissal of the Shinnecock defendants' claims for prima facie tort based on the plaintiff initiating the "present baseless cause of action and engaging in defamation" for failure to state a claim, pursuant to Rule 12(b)(6).  "Prima facie tort is designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy."  <u>Curiano</u>, 63 N.Y.2d at 118, 480 N.Y.S.2d at 469, 469 N.E.2d at 1327.  It is not a "'catch-all' alternative for every cause of action which cannot stand on its legs."  <u>Id.</u> at 118, 480 N.Y.S.2d at 470, 469 N.E.2d at 1328. (quotations omitted).  It is well-settled that "lawsuits claiming meritless litigation are not permitted based on a claim of prima facie tort."  <u>Music Ctr. S.N.C. Di Luciano Pisoni & C. v. Prestini Musical Instruments Corp.</u>, 874 F. Supp. 543, 557 (E.D.N.Y. 1995).  Similarly, lawsuits alleging conduct sounding in a claim for defamation cannot be a basis for a prima

facie tort.  Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F. Supp. 2d 273, 285 (E.D.N.Y. 2003)

Defendants do not allege any facts that might distinguish their prima facie tort claims from that which is already available in traditional tort.  As a result, the Shinnecock defendants' counterclaims for prima facie tort are dismissed pursuant to Rule 12(b)(6).

## VI.    Leave to Amend

According to Rule 15(a), leave to amend the complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); see also Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").  Nevertheless, a district court has the discretion to deny leave to amend if an amendment would be futile.  See Marchi v. Board of Coop. Educ. Servs., 173 F.3d 469, 477-78 (2d Cir. 1999).  Thus, "where the plaintiff is unable to demonstrate that [it] would be able to amend [its] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  Hayden, 180 F.3d at 53.

In keeping with the liberal spirit of Rule 15(a), and to the extent that the Shinnecock defendants can in good faith cure the defects set forth herein, the Gumbs defendants have leave to amend their counterclaim for tortious interference, and

the Shinnecock tribal defendants have leave to amend their claim

for abuse of process.  If the Shinnecock defendants choose to

amend their claims, they shall do so within ten days of entry of

this order.  Because an amendment to the defendants' remaining

claims would be futile, they are dismissed without leave to

amend.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to

dismiss the Shinnecock defendants' counterclaims is granted.

The Shinnecock defendants are granted leave to amend their

counterclaims for abuse of process and tortious interference

with prospective economic advantage within ten days of entry of

this order.


**SO ORDERED**.

Dated: December 1, 2009
       Brooklyn, New York


_____    /s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
