UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GRISTEDE'S FOODS, Inc.,

                         Plaintiff,

     -against-                                    **MEMORANDUM & ORDER**

POOSPATUCK(UNKECHAUGE) NATION,                    06-cv-1260 (KAM)
a/k/a POOSPATUCK INDIAN TRIBE,
a/k/a UNKECHAUG INDIAN NATION,
a/k/a UNKECHAUG NATION; HARRY
WALLACE; THE POOSPATUCK SMOKE SHOP
AND TRADING POST; GOLDEN FEATHER
CIGARETTE EXPRESS; KOKO SMOKE;
POOSPATUCK INDIAN OUTPOST;
MONIQUE'S SMOKE SHOP, a/k/a RAINBOW
SMOKE; RED DOT & FEATHER SMOKE
SHOP; SMOKING ARROW SMOKES; TDM
DISCOUNT CIGARETTES; POOSPATUCK
TRADING CO. & SMOKE SHOP; SMOKE
WAREHOUSE; BARGAIN BUTTS, a/k/a
BARGAINBUTTS.COM; SHAWN MORRISON;
KEN DIMONEICO; RODNEY MORRISON;
RONNIE BELL; JESSEY WATKINS;
RAYMONG HART; JENNIFER DAVIS;
DENISE PASCHALL; TOMISINA MACK; THE
SHINNECOCK TRIBE, a/k/a THE
SHINNECOCK INDIAN NATION; RANDALL
KING; GORDELL WRIGHT; FREDERICK C.
BESS; LANCE A. GUMBS, a/k/a
LANCELOT GUMBS; SHINNECOCK TRADING
POST LTD., a/k/a SHINNECOCK LTD.;
SHINNECOCK SMOKE SHOP; RAINDROP'S
QUICK STOP, a/k/a THUNDERBIRD
COFFEE SHOP; TRUE NATIVE SMOKE
SHOP; BNB TOBACCO PRODUCTS;
JONATHON SMITH; DIANE C. VIEIRA;
HOLLY DAVIS; BRIAN N. BESS; ANDRE
DENNIS; TAOBI SILVA; and JOHN DOES
1 through 100,
                         Defendants.

----------------------------------X

**MATSUMOTO**, United States District Judge:

Before the court is a motion to stay this action by the defendants Shinnecock Indian Nation; Gordell Wright, Frederick C. Bess, and Randy King[1], each sued in his official capacity as an alleged senior official of the Shinnecock Nation; Lance A. Gumbs, in his individual capacity, and the Shinnecock Trading Post (together, "Gumbs defendants"); Dianne Vieira; Raindrop's Quick Stop; Brian N. Bess; BNB Tobacco Products; and True Native Smoke Shop (collectively, "Shinnecock defendants") pending a Bureau of Indian Affairs ("BIA") determination of the tribal status of the Shinnecock Nation. For the following reasons, the Shinnecock defendants' motion to stay is granted with the limitation that if the BIA has not made a final determination on the Shinnecock's tribal status by August 1, 2010, the Shinnecock defendants shall make a showing to the court as to why the stay should not be lifted.

## BACKGROUND

### I.  Procedural History

On March 20, 2006, plaintiff Gristede's Foods, Inc. ("Gristede's" or "plaintiff") commenced this action against the Unkechauge Nation, a/k/a Unkechauge Poospatuck Tribe (the

---

[1]  On May 28, 2009, defendant informed that court that Lance A. Gumbs, previously named in his official tribal capacity had ceased to hold the office of Trustee of the Shinnecock Indian Nation and his successor, Randy King was automatically substituted. (Doc. Nos. 489, 490.) Lance A. Gumbs, as sued in his official tribal capacity, was terminated as a defendant on July 20, 2009.

"Unkechauge" or "tribe") and the Shinnecock Tribe, a/k/a the Shinnecock Indian Nation (the "Shinnecock"); individual defendants Harry Wallace ("Wallace"), Randall King, James W. Eleazer, Jr., and Lance A. Gumbs; and the Poospatuck Smoke Shop and Trading Post (the "Poospatuck Smoke Shop" or "Smoke Shop") and Shinnecock, Ltd. Plaintiff, the owner of several supermarkets in the New York City metropolitan area and on Long Island, New York, alleged violations of RICO and the Lanham Act, and state law claims for unjust enrichment, unfair competition, deceptive trade practices, and false advertising resulting from defendants' tax-free cigarette sales and advertising.

In July 2006, the defendants who were a party to the action at the time filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that they are immune from suit by virtue of their sovereign immunity as Indian tribes. In an order of December 22, 2006, the court deferred ruling on the motion pending further briefing and an evidentiary hearing on the tribal status of the Shinnecock and Unkechauge defendants. After filing a motion for reconsideration, the defendants were granted leave to file new Rule 12 motions, and the motions to dismiss pursuant to Rule 12(b)(1) and for reconsideration were subsequently withdrawn without prejudice to reinstatement if the new Rule 12 motions were denied.

On November 5, 2007, the court denied in part the defendants' motion to dismiss pursuant to Rule 12(b)(6) and the parties renewed their motion to dismiss pursuant to Rule 12(b)(1). (Doc. No. 75.) The court set a discovery schedule and hearing for the proposed Rule 12(b)(1) motion. On December 21, 2007, plaintiff filed its Amended Complaint to include those claims sustained by the court - the false advertising claim under the Lanham Act and the state consumer fraud claims - and to name Lance A. Gumbs in his individual capacity for his ownership and operation of the Shinnecock Trading Post, previously identified as Shinnecock, Ltd. (Doc. No. 82.) The Shinnecock, Randall King, James W. Eleazer, Jr., Lance A. Gumbs, and Shinnecock Trading Post defendants subsequently decided not to pursue the Rule 12(b)(1) motion and obtained an order vacating their sovereign immunity discovery schedule.[2] (1/4/08 Order granting Motion to Terminate Discovery Plan.)

On August 18, 2008, plaintiff filed a Second Amended Complaint which included additional defendants who are parties to this motion: Gordell Wright, Frederick C. Bess, Dianne Vieira, Raindrop's Quick Stop, Brian N. Bess, BNB Tobacco Products, and True Native Smoke Shop, among others not in the

---

[2] By decision dated October 8, 2009, the court granted the 12(b)(1) motions as to the Unkechauge tribe and to Chief Henry Wallace in his tribal capacity, and denied the 12(b)(1) motion as to Chief Henry Wallace in his individual capacity and as to the Poospatuck Smoke Shop and Trading Post. (Doc. No. 493.)

original complaint.  (Doc. No. 142.)  On October 10, 2008,

defendants Wright, Bess, Gumbs, the Shinnecock Trading Post, and

the Shinnecock answered the Second Amended Complaint and

asserted counterclaims against plaintiff.[3]  (Doc. Nos. 404, 405.)

Defendants BNB Tobacco Products, Brian N. Bess, Dianne C Vieira,

Raindrop's Quick Stop, and True Native Smoke Shop were granted

an extension of time to file their Answer until twenty days from

entry of this Memorandum & Order.  (Order 2/11/09.)

## II.  The Shinnecock Indian Nation's Pending BIA Application

Over thirty years ago, on September 5, 1978, the

Department of the Interior ("DOI") promulgated regulations for

tribal recognition of Indian groups through the BIA.  25 C.F.R.

§ 83, et seq. (2006).  The Shinnecock Nation was listed as a

group petitioning for recognition in a list published by the DOI

on January 2, 1979.

The BIA has not, to date, made a decision as to the

tribal status of the Shinnecock and, in 2005, the United States

District Court for the Eastern District of New York considered

the tribal status of the Shinnecock for the purpose of

determining whether the tribe could construct a casino on

---

[3]  By decision dated December 1, 2009, the court granted the
plaintiff's motion to dismiss those counterclaims, but granted
leave to amend the counterclaims for tortious interference with
prospective economic advantage and for abuse of process.  (Doc.
No. 496)

Shinnecock land.  New York v. Shinnecock Indian Nation, 400 F.
Supp. 2d 486 (E.D.N.Y. 2005).  The court held that the
Shinnecock met the federal common law definition of a "tribe" as
articulated in Montoya v. United States, 180 U.S. 261 (1901).
Shinnecock Indian Nation, 400 F. Supp. 2d at 493.  However,
despite the determination of Shinnecock's tribal status through
federal common law, the DOI did not place the Shinnecock on the
list of federally recognized tribes, promulgated pursuant to the
Federally Recognized Indian Tribe List Act of 1994.  25 U.S.C.
§ 479a, et seq.

        The Shinnecock subsequently sued the BIA alleging
undue delay in determining the petition for tribal recognition
and violation of the Administrative Procedures Act and the List
Act.  Shinnecock Indian Nation v. Kempthorne, No. 06-cv-5013,
2008 U.S. Dist. Lexis 75826, at *1 (E.D.N.Y. Sept. 30, 2008).
As a result of the litigation, the Shinnecock was granted a
waiver which moved the Shinnecock to the top of the DOI's list
and established a timetable for the DOI's decision about the
Shinnecock's tribal status.  On October 6, 2008, United States
Attorney Benton Campbell submitted a letter in the Shinnecock
Indian Nation v. Kempthorne case stating that the DOI will issue
a proposed finding on the Nation's petition "within one year

from the date the petition is placed on active consideration (November 10, 2009)."[4]  (Shinnecock Defs.' Mem., Ex. 2 at 2.)

As a result of this recent development regarding its pending BIA application for tribal recognition, on November 13, 2008, the Shinnecock, together with Wright, Bess, Gumbs, and the Shinnecock Trading Post defendants, requested leave to file a motion to stay this action pending the BIA's determination on the Shinnecock's tribal status.  (Doc. No. 424.)  The motion to stay on behalf of the Shinnecock defendants was fully briefed on February 6, 2009.  Subsequently, on May 28, 2009, the Shinnecock defendants filed a letter informing the court that the Shinnecock and the BIA entered into a Stipulation and Order in Shinnecock Indian Nation v. Kempthorne establishing a timeline for final determination of the Shinnecock Indian Nation's petition for federal recognition ("Shinnecock Stipulation and Order").  (Doc. No. 491.)  Pursuant to the Shinnecock Stipulation and Order, a proposed finding on the Shinnecock's petition will be made on or before December 15, 2009 and the Shinnecock defendants anticipate that a final determination will be issued "by or before the middle of next year (approximately July 19, 2010)."  (Doc. No. 491.)

---

[4] As explained, infra, this date was later changed to December 15, 2009.  (Doc. No. 491.)

## I.   Shinnecock Defendants' Motion to Stay Pending the BIA Determination

In the present motion before the court, the Shinnecock defendants argue that a stay pending a determination of tribal status by the BIA is warranted because, should the Shinnecock be placed on the BIA's list of federally recognized tribes, it will be immune from suit.  Accordingly, defendants argue that the defendant smoke shops and owners thereof would enjoy the tribe's immunity as entities of the tribe.

As discussed in Gristede's Foods, Inc. v. Unkechauge Nation,--- F. Supp. 2d ----, 2009 WL 3235181, at *21 (E.D.N.Y. Oct. 8, 2009), "an Indian tribe is subject to a suit only where Congress has authorized the suit or the tribe has waived its immunity."  Kiowa Tribe of Okla. v. Mfg. Techs, Inc., 523 U.S. 751, 754 (1998).  To enjoy sovereign immunity, a group of Indians must be a tribe recognized by federal law.  Pursuant to federal law, a group of Indians is a tribe if it either: 1) has been federally recognized by Congress or the BIA; or 2) meets the common law definition first articulated by the Supreme Court in Montoya v. United States, 180 U.S. 261 (1901).  See United States v. Sandoval, 231 U.S. 28, 46-47 (1913); Native Village of Tyonek v. Puckett, 957 F.2d 631, 635 (9th Cir. 1992).  Therefore, should the BIA recognize the Shinnecock as a tribe,

the Shinnecock would be entitled to immunity from suit. Likewise, defendants Wright, Bess, and King, as sued in their official tribal capacities, would share in the Shinnecock's immunity.

Even if the Shinnecock is recognized as a tribe by the BIA, however, the additional Shinnecock defendant smoke shops and individuals sued in their individual capacity must establish that they are "arms of the tribe" in order to share in its immunity.  See, e.g., Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288, 1292-96 (10th Cir. 2008) (holding that tobacco manufacturer had sovereign immunity as an enterprise of the tribe, which deprived the district court of subject matter jurisdiction); Allen v. Gold Country Casino, 464 F.3d 1044, 1046-47 (9th Cir. 2006) (holding that casino was entitled to tribal sovereign immunity as an arm of the tribe); accord Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 358 (2d Cir. 2000) ("It may be that the district court will conclude, upon further analysis, that the museum is an agency of the Tribe and, as such, is entitled to benefit from the Tribe's immunity.").  Therefore, although the BIA's recognition of the Shinnecock's tribal status is necessary for the tribe and the tribal officials to claim immunity, such tribal status is insufficient to automatically render the Shinnecock smoke shop and individual defendants immune from suit.

## A. The Doctrine of Primary Jurisdiction

To determine if a stay is warranted pending a BIA determination of the Shinnecock's tribal status for any or all of the Shinnecock defendants, the court is guided by the Second Circuit's analysis in <u>Golden Hill Paugussett Tribe of Indians v. Weicker</u>, 39 F.3d 51 (2d Cir. 1994). In <u>Golden Hill</u>, the Second Circuit held that the doctrine of primary jurisdiction was applicable where the plaintiff tribe, which brought suit under the NonIntercourse Act, had a pending petition with the BIA for federal recognition. <u>Id.</u> at 58-60. Instead of determining tribal status "where the [tribe] ha[d] already invoked BIA authority," the <u>Golden Hill</u> court stayed the action pending the BIA's determination, after analyzing the interests at stake in a delay. <u>Id.</u> at 60-61.

The Second Circuit applies the doctrine of primary jurisdiction in cases, as here, "where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." <u>Id.</u> at 58-59 (citations omitted). The threshold issue in determining whether the primary jurisdiction doctrine applies is "whether both the court and an agency have jurisdiction over the same issue." <u>Id.</u> at 59. In <u>Golden Hill</u>, the Second Circuit reasoned that the

federal common law and the BIA criteria overlap, but "their application might not always yield identical results" and "deference to the primary jurisdiction of the agency [is] appropriate," at least where the plaintiff has a pending petition with the BIA.  Id. at 59-60.  The court left open the question of whether a stay would be appropriate absent a pending BIA application.  Id. at 60.

The court finds that the Second Circuit's decision in Golden Hill is squarely on point and binding as far as the application of the primary jurisdiction doctrine is concerned. At issue in this case is the Shinnecock's tribal status – an issue over which both the court and the agency have jurisdiction.  Id. at 58-59; see Montoya, 180 U.S. at 266 ; Sandoval, 231 U.S. at 46-47; Puckett, 957 F.2d at 635.  See also, Unkechauge Nation,--- F. Supp. 2d ----, 2009 WL 3235181, at *21.  As in Golden Hill, here, there is a pending BIA petition, and, in this case, the Shinnecock petition was recently moved to the "Active Consideration List."  Indeed, in this case, the BIA has stipulated to a date certain by which it must issue proposed findings on the Shinnecock's pending application.  (Doc. No. 491.)  Therefore, the court need not address the question left open by Golden Hill as to whether deference would be appropriate in the absence of a pending BIA application.

As a result, pursuant to the doctrine of primary jurisdiction, the court will defer to the BIA, so long as it is satisfied that any prejudice from the added delay does not weigh against a stay in relation to the other interests at stake. For the following reasons, the court finds that the competing interests weigh in favor of a stay for all defendants. However, the court limits the stay to the extent that if, by August 1, 2010, the BIA has not issued a final determination as to the tribal status of the Shinnecock, the Shinnecock defendants shall make a showing to the court as to why the stay should not be dissolved.

### B. Analysis of Prejudice Resulting from a Stay

In finding that the primary jurisdiction doctrine warrants staying the action pending the BIA's determination on tribal status, the court addresses the competing interests at stake in delaying the matter. Golden Hill, 39 F.3d at 60-61. The Golden Hill court acknowledged the clear "public interest in reasonably prompt adjudication of claims" and discussed the particular detrimental effects of delay on the title of innocent landowners while the BIA considered the application under a leisurely two-year time frame. Id. at 60. Noting that under the circumstances, it would be preferable if the BIA would "fast-track" the matter, the Golden Hill court remanded and directed the district court to stay the action. Id.

Generally, on a motion to stay, the movant bears the burden to establish the necessity for a stay. Lasala v. Needham & Co., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (citing Clinton v. Jones, 520 U.S. 681, 708 (1997)). If there is "even a fair possibility that the stay for which [the movant] prays will work damage to someone else, the movant must make out a clear case of hardship or inequity in being required to go forward." Id. at 427 (internal quotations omitted). Ultimately, the power to stay proceedings is within the discretion of the court. Landis v. North American Co., 299 U.S. 248, 254-55 (1936). In determining whether a stay is warranted, the court balances the following factors on a case-by-case basis, with the ultimate goal of avoiding prejudice:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). In consideration of these factors, the court finds that a stay, with limitation, is warranted.

1. <u>Interests of the Plaintiff</u>

Plaintiff states that "[s]taying this case for more than a year would be prejudicial to Plaintiff" because plaintiff would go forward with the action with the other defendants, not parties to this motion, against whom plaintiff has alleged similar claims, only to "try the same case again against [the Shinnecock defendants] in a year or more from now should the DOI deny [the Shinnecock's] application." (Pl.'s Opp'n at 7.) Plaintiff notes that even after the BIA makes its final determination, an interested party has 90 days to seek reconsideration of that decision, and there is no time limit by which the BIA must make a decision on reconsideration. (<u>Id.</u> at 7 n. 2.)

First, the Shinnecock Stipulation and Order contemplates that the DOI shall issue a final determination by approximately mid-July of 2010, barring requests for enlargements of the shortened comment periods. (Doc. No. 491.) Furthermore, this Memorandum and Order restricts the length of the stay until August 1, 2010. This limitation significantly undercuts plaintiff's arguments that it will be prejudiced to the extent that plaintiff's argument relies, at least in part, on the premise that a stay will be for an uncertain amount of time and for more than one year. Furthermore, in seeking to consolidate this action with <u>The City of New York v. Golden</u>

<u>Feather Smoke Shop, Inc., et al.</u>, No. 08-cv-03966 (CBA)
(E.D.N.Y. 2008), a case filed two years after the present
action, plaintiff has implicitly acknowledged that a delay would
not be prejudicial in all circumstances.

The court is not persuaded by the plaintiff's argument
that staying the case against the Shinnecock defendants and
allowing it to go forward against certain defendants unrelated
to the Shinnecock defendants automatically results in prejudice,
particularly where the plaintiff chose to name parties unrelated
to the Shinnecock defendants in its complaint. At some point in
time, plaintiff will have to seek discovery from these separate
and distinct entities, and engage in any pre-trial motion
practice based on the distinct discovery obtained. As a result,
the only point at which the plaintiff might be prejudiced, at
least financially, is if this case should proceed to trial
without the Shinnecock defendants. However, considering that
the parties are still engaged in preliminary motion practice, a
potential trial without the Shinnecock defendants weighs
minimally in favor of plaintiff's position.

Further, the court notes that the Shinnecock
defendants have indicated that, if a stay is denied, they will
pursue discovery and request a hearing for the court to
determine the Shinnecock's tribal status. Regardless of whether
the court would actually grant such a request given that some of

the Shinnecock previously chose not to take the opportunity to engage in tribal discovery relating to a tribal status hearing, additional motion practice surrounding this issue would further delay the matter, and require all parties to incur additional expenses. Therefore, on balance, the delay of awaiting a BIA determination is minimized by a stay.

### 2. Interests of the Shinnecock Defendants

The court finds that the Shinnecock defendants' interests warrant a stay in this case. Defendants argue that a stay is necessary because, if the Shinnecock is recognized as a tribe by the BIA, the Shinnecock and its tribal officials will enjoy sovereign immunity and be able to redirect the scarce funds being used to defend this action back into the community. (Defs.' Mem. at 8-9.)

The court agrees that waiting for a BIA determination as to tribal status would potentially save the Shinnecock and tribal officials unnecessary and costly litigation expenses, should the Shinnecock gain tribal recognition through the BIA. If the Shinnecock is recognized, it and the tribal officials, to the extent that they are alleged to have acted in their tribal capacity, would be immune from suit. If the Shinnecock is not recognized, the suit will go forward. The slight delay that results from staying the matter in the interest of saving the

Shinnecock and the tribal officials – as well as the plaintiff – discovery and litigation expenses is warranted. This delay is particularly palatable because at stake in the BIA's determination is the Shinnecock's sovereign immunity. A tribe's "full enjoyment of its sovereign immunity is irrevocably lost once the [t]ribe is compelled to endure the burdens of litigation." Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1172 (10th Cir. 1998). Although the BIA could decide that the Shinnecock is not entitled to tribal status, the Shinnecock and the tribal officials have an interest in protecting their sovereign immunity in the event that they are entitled to it.

Other than the tribe and its officials, the additional Shinnecock defendants also have an interest in staying this matter to avoid unnecessary litigation expenses, as well as to ensure that this litigation proceeds along the proper path. If the Shinnecock is recognized as a tribe by the BIA, presumably these defendants will attempt to establish that they are arms of the tribe. However, if the Shinnecock is not recognized, establishing this fact would be unnecessary. Therefore, not only would proceeding against these defendants risk unnecessary litigation and related expenses, but, if the Shinnecock is recognized, it would require these defendants to change their litigation strategy mid-course.

### 3. Interests of the Court, the Public and Non-parties

The court also finds that the interests of the court, public, and non-parties weigh in favor of a stay. Should the case proceed and the BIA then recognize the Shinnecock's tribal status, the Shinnecock would be entitled to immunity. As a result, time and resources would have been wasted on litigation against a party improperly before the court. Therefore, staying the action avoids a possibility of unnecessary litigation by both parties, which, in the court's view, outweighs the plaintiff's interest in avoiding a possibility of an unnecessary delay.

Furthermore, as embodied in the policies behind the primary jurisdiction doctrine, discussed supra, a "court should delay forging ahead when there is a likelihood that agency action may render a complex fact pattern simple or a lengthy judicial proceeding short." Golden Hill, 39 F.3d at 60. "The BIA's resolution of . . . factual issues regarding tribal status will be of considerable assistance to the district court" in ultimately determining the Shinnecock defendants' immunity from suit. Id. If the BIA determines tribal status, the court will not need to determine whether it should do so, given the parties' prior positions with regard to the Shinnecock's previously anticipated Rule 12(b)(1) motion. Further, assuming that litigating the Shinnecock's tribal status at this juncture

18

would be appropriate, the court's resources are conserved in so far as it will not, at least until the BIA's determination, need to consider whether the smoke shops are tribal entities. Therefore, the court finds that substantial judicial resources would be conserved, given the fact-intensive nature of tribal recognition.

Additionally, the court finds that the interests of the public and non-parties weigh in favor of a stay. A stay will ultimately ensure that the Shinnecock defendants are properly before the court, and, therefore, that the court is acting within the "limits of the judicial power of the United States." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (quotations omitted). Moreover, a stay is consistent with the policies of the primary jurisdiction doctrine in that it ensures that the court is not encroaching on the powers of the executive and that there is "consistency and uniformity" in the results of tribal status determinations where a tribe has applied to the BIA for federal recognition. Golden Hill, 39 F.3d at 59. As a result of the foregoing analysis, the court finds that the primary jurisdiction doctrine and the competing interests warrant a stay with limitation. If the BIA has not made a determination of tribal status by August 1, 2010, defendants shall show cause on that date as to why the stay should not be lifted.

## II. Waiver of Sovereign Immunity Due to Certain of the Shinnecock Defendants' Assertion of Counterclaims

Plaintiff argues that recognition by the BIA is irrelevant in this case because, even if otherwise entitled to immunity, the Shinnecock defendants have waived it by asserting counterclaims against the plaintiff. The Shinnecock Nation, Bess, Wright, and Gumbs have asserted defamation, abuse of process and prima facie tort counterclaims. (Doc. No. 404.) Gumbs, in his individual capacity, and the Shinnecock Trading Post have asserted counterclaims alleging false advertising, deceptive trade practices and interference with prospective advantage in addition to counterclaims for defamation, abuse of process and prima facie tort. (Doc. No. 405.) The court notes that the BNB Tobacco Products, Bess, Vieira, Raindrop's Quick Stop, and True Native Smoke Shop defendants have not asserted counterclaims, to date. Therefore, plaintiff's argument is inapplicable to these defendants.

In support of its argument, plaintiff cites two cases from the Northern District of New York, each finding that the plaintiff sovereigns, one of which was New York State, the other an Indian tribe, waived their immunity defense by commencing an action, and rejecting the plaintiffs' motions to dismiss counterclaims on the basis of sovereign immunity. (Pl.'s Opp'n at 9 (citing State of <u>New York v. Oneida Indian Nation of New</u>

York, No. 95-cv-554, 2007 WL 2287878, *7 (N.D.N.Y. Aug. 7, 2007) ("Oneida I"); Cayuga Indian Nation of New York v. Village of Union Springs, 293 F. Supp. 2d 183, 195 (N.D.N.Y. 2003).) As the Oneida Indian Nation v. New York ("Oneida II") court stated, it is "well established that when . . . an Indian tribe initiates a lawsuit, a defendant may assert counterclaims that sound in recoupment even absent a statutory waiver of immunity." Oneida II, 194 F. Supp. 2d 104, 136 (N.D.N.Y. 2002) (emphasis added) (holding that counterclaims against the United States are permissible if it arises out of the same transaction that grounds the main action, and requests only a set-off in damages, not affirmative recovery (citing United States v. Forma, 42 F.3d 758, 764-65 (2d Cir. 1994))). In these cases, the sovereign entities affirmatively invoked federal court jurisdiction by initiating an action in federal court. The court's inquiry, therefore, focused on the scope of the sovereign plaintiff's waiver.

Here, however, unlike the authority proffered by plaintiff, the defendants did not invoke federal jurisdiction at the outset, but instead filed counterclaims. At first glance, the assertion of a counterclaim may appear akin to the "affirmative action" invoking federal court jurisdiction characterizing the initiation of a lawsuit. However, to hold that the initiation of a counterclaim constitutes a waiver of

immunity in the same way that the initiation of a lawsuit does would require a sovereign defendant "to give up other valid defenses in order to preserve its immunity defense." Skelton v. Henry, 390 F.3d 614, 618 (8th Cir. 2004).

Recognizing that a sovereign should not be required to waive defenses, circuit courts determine whether a sovereign defendant has waived its immunity through its litigation conduct by determining if the defendant's conduct affirmatively invoked the jurisdiction of federal court, rather than being merely defensive. See Aholelei v. Dep't of Pub. Safety, 488 F. 3d 1144, 1149 (9th Cir. 2007); Skelton, 390 F.3d at 618; New Hampshire v. Ramsey, 366 F.3d 1, 16 (1st Cir. 2004) (inquiring whether a sovereign defendant's litigation conduct evidences a "clear choice to submit its rights for adjudication in the federal courts"). If the defendant's litigation conduct affirmatively invokes federal court jurisdiction, courts find that the defendant waived its sovereign immunity. See, e.g., Mohegan Tribe v. State of Conn., 528 F. Supp. 1359, 1367 (D. Conn. 1982). Courts have held that defendants invoke federal court jurisdiction by removing a case to federal court and defending a case on the merits through final judgment without raising an immunity defense. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 624 (2002) (by joining the removal of an action to federal court a state waived its 11th Amendment

immunity); <u>Meyers v. Texas</u>, 410 F.3d 236, 248 (4th Cir. 2005) (citing cases). For example, the state in <u>Ramsey</u> failed to raise a sovereign immunity defense and "expressed a clear choice to submit its rights for adjudication in the federal courts" by "voluntarily invok[ing] the jurisdiction of a federal agency, the [United States Department of Education], and the federal courts in review of the agency determination." <u>Ramsey</u>, 366 F.3d at 16. In <u>Skelton</u>, by contrast, the court held that a state's assertion of a counterclaim and third party complaint were not sufficient to waive a claim of Eleventh Amendment immunity asserted in the same document. <u>Skelton</u>, 390 F.3d at 618.

In light of this authority, the court finds that the proper analysis of whether defendants waived sovereign immunity is to determine if their actions affirmatively invoke federal court jurisdiction. If there has been a waiver by litigation conduct, the court finds that the proper inquiry is to then determine the scope of the waiver. See <u>Koehler v. Iowa Coll. Student Aid Comm'n (In re Koehler)</u>, 204 B.R. 210, 221 (Bankr. D. Minn. 1997) ("the filing of [defendant's] Counterclaim in the current proceeding constitutes a waiver of its Eleventh Amendment immunity with respect to any claims asserted against it that arise out of the same transaction or occurrence upon which its Counterclaim is based"); <u>cf. Oneida II</u>, 194 F. Supp. 2d at 136 (finding the counterclaims arose out of the same

transactions as the main claim and sought similar relief, therefore immunity was waived by the sovereign plaintiff); Mohegan Tribe, 528 F. Supp. at 1367 (the counterclaim sought the full value of any improvements made on the land, rather than a defensive claim for recoupment, therefore, the state waived immunity to tribe's NonIntercourse Act claim).

In their Answer to the Second Amended Complaint, the Shinnecock Nation, and the senior tribal official defendants Gumbs, Bess, and Wright asserted the defense of sovereign immunity and counterclaims. (Doc. No. 404.)  Like the case before the Eighth Circuit in Skelton, the counterclaims were asserted in the same document as the affirmative defense of immunity.  As held by the Eighth Circuit, this conduct is not sufficient to waive a defense of immunity because the defendants did not voluntarily invoke the jurisdiction of the court by filing a counterclaim and did not "selectively invoke[] immunity to achieve litigation advantages." Skelton, 390 F.3d at 618. By filing the counterclaim at a time when the viability of the defendants' immunity defense was in question, these defendants cannot be found to have waived their immunity defense. State Contr. & Eng'g Corp. v. Fla., 258 F.3d 1329, 1337 (Fed. Cir. 2001). As a result, the court finds that these defendants have not waived their immunity defense by asserting counterclaims and a stay is appropriate.

By contrast, the Gumbs defendants did not assert a defense of sovereign immunity in their Answer. Furthermore, these defendants, who have been parties to this action since its inception, previously withdrew their motion to dismiss for lack of subject matter jurisdiction on the basis of tribal sovereign immunity. Since withdrawing that motion approximately two years ago, the Gumbs defendants have not pursued a sovereign immunity defense. Now, the Gumbs defendants seek a stay in this action pending a determination by the BIA on the tribal status of the Shinnecock, implicitly with the intention of invoking sovereign immunity as a defense against the plaintiff's claims should the Shinnecock be recognized.

The court finds that the Gumbs defendants' conduct constitutes a "selective[] invo[cation of] immunity to achieve litigation advantages." Skelton, 390 F.3d at 618. The Gumbs defendants' filing of counterclaims is an affirmative act, rather than a "defensive move . . . []compatible with an intent to preserve sovereign immunity." Aholelei, 488 F.3d at 1149. Therefore, the Gumbs defendants' litigation conduct constitutes a limited waiver of sovereign immunity for claims against them that "arise[] out of the same subject as the[ir counterclaims] and [are] based on issues asserted in the [Answer]." Cayuga, 293 F. Supp. 2d at 194; see Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991)

(stating that when an Indian tribe invokes the jurisdiction of the federal courts by initiating an action, a tribe does not waive its immunity from actions that could not have otherwise have been brought against it).

To determine the scope of the Gumbs defendants' waiver of sovereign immunity by litigation, courts use a similar "arising from the same transaction or occurrence" analysis as when identifying compulsory counterclaims. In re Koehler, 204 B.R. at 221 (citing Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254, 264 (8th Cir. 1979), cert. denied, 442 U.S. 921 (1979); Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1086-87 (3d Cir. 1992); United States v. Bulson (In re Bulson), 117 Bankr. 537, 541 (B.A.P. 9th Cir. 1990), aff'd 974 F.2d 1341 (9th Cir. 1992)). There must be a "logical relationship" between the sovereign's claim and its adversary's counterclaim for the sovereign to have waived sovereign immunity. See Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (identifying compulsory counterclaims). "This inquiry is flexible and 'attempts to analyze whether the essential facts of various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" Computer Assocs. Int'l, Inc. v. Altai, Inc., 893 F.2d 26, 29 (2d Cir.

1990) (quoting <u>Harris v. Steinem</u>, 571 F.2d 119, 123 (2d Cir. 1978)).

The court finds that plaintiff's claims do not arise out of the same transaction or occurrence as the defendants' counterclaims. Therefore, the Gumbs defendants' conduct, even though characterized as affirmative rather than defensive, does not constitute a waiver by litigation of sovereign immunity for the claims contained in plaintiff's complaint. Although the plaintiff's main claims and defendants' counterclaims allege violations of the same state laws, they present different "essential facts."

The Gumbs defendants' First, Second, Third, and Seventh causes of action, alleging defamation and prima facie tort based on defamation and initiation of the action, and their Sixth cause of action, alleging interference with prospective economic advantage, relate to the initiation of the lawsuit by plaintiff, or to conduct subsequent to the plaintiff's initiation of the lawsuit. As a result, the Gumbs defendants' assertion of counterclaims arising from the initiation of plaintiff's lawsuit and events transpiring subsequent to the commencement of the lawsuit has not waived their purported sovereign immunity as to plaintiff's present claims. <u>See, e.g.</u>, <u>Altai</u>, 893 F.2d at 29 (claims of interference with contractual relations and business disparagement, libel and slander, related

to the initiation of the lawsuit and subsequent conduct, and were not compulsory counterclaims); Harris, 571 F.2d at 124 (acknowledging that although plaintiff's success on the main claim would have defeated the counterclaim, "a counterclaim which stems from the filing of the main action and subsequent alleged defamations is not a compulsory counterclaim covered by Rule 13(a)").

Likewise, the Gumbs defendants' Fourth and Fifth counterclaims allege violations of New York State's General Business Law ("GBL") for plaintiff's allegedly deceptive advertising and deceptive trade practices based on the prices plaintiff advertised for items in its stores. In the parties' briefs regarding the plaintiff's motion to dismiss the Gumbs defendants' counterclaims, plaintiff argues that the Gumbs defendants' GBL counterclaims do not arise out of the same transaction or occurrence as plaintiff's claims and the Gumbs defendants do not contend otherwise. (Doc. Nos. 461, 463.) As discussed in this court's December 1, 2009 Memorandum and Order, the court agrees that the Gumbs defendants' GBL counterclaims do not arise out of the same transaction or occurrence as the plaintiff's claims. (Doc. No. 496.) Although the plaintiff's main claims and Gumbs defendants' GBL counterclaims allege violations of the same state laws, they present different "essential facts." The plaintiff's claims allege false

advertising of one specific item, "tax-free" cigarettes, whereas the Gumbs defendants' counterclaims are based on allegations of various types of false advertising regarding, inter alia, shelf unit prices and stock-keeping unit prices, container weight, quantity of product, product expiration dates, and the taxable status of unspecified "items" sold by plaintiff's supermarkets. The subject matter of the plaintiff's claims asserted against the Gumbs defendants is different from the Gumbs defendants' counterclaims. As such, the Gumbs defendants' waiver of any sovereign immunity defense does not include a waiver as to the plaintiff's claims against them.

To the extent that the assertion of these claims constitutes an affirmative act inconsistent with sovereign immunity, the plaintiff's claims fall outside of the scope of that waiver. Thus, the Gumbs defendants' purported sovereign immunity remains a potentially viable defense against the plaintiff's claims against the Gumbs defendants.

Because the sovereign immunity of the Shinnecock Nation is relevant to the court's subject matter jurisdiction over the Shinnecock defendants, despite the assertion of counterclaims by certain of these defendants, the court finds that a stay is appropriate pursuant to its analysis supra.

**CONCLUSION**

For the foregoing reasons, the Shinnecock defendants' motion to stay is granted; however, the Shinnecock defendants who have not yet filed an Answer to plaintiff's Second Amended Complaint shall do so within twenty days of this Memorandum & Order, as previously ordered by the court. If, by August 1, 2010, the BIA has not made a final determination as to the Shinnecock's tribal status, the Shinnecock defendants shall show cause on that date as to why the stay should not be dissolved.

**SO ORDERED.**

Dated: December 10, 2009
      Brooklyn, New York

                                  _____ /s/_____
                                  KIYO A. MATSUMOTO
                                  United States District Judge
                                  Eastern District of New York